Henry J. HALDEMAN, Appellant,

v.

UNITED STATES of America, Appellee.

No. 7733.

United States Court of Appeals
Tenth Circuit.

Jan. 13, 1965.

**60**

Stanley Fleishman, Hollywood, Cal. (Sam A. Crow, Topeka, Kan., with him on the brief), for appellant.

Newell A. George, U. S. Atty., Kansas City, Kan., for appellee.

Before PICKETT, LEWIS and BREITENSTEIN, Circuit Judges.

PICKETT, Circuit Judge.

The appellant, Haldeman, was charged in a ten-count indictment with using the United States mails to transmit booklets or advertisements of material which were obscene, lewd, lascivious, indecent and filthy, in violation of 18 U.S.C. § 1461. The mailing of the material described in the several counts was ad-

mitted. Haldeman was convicted on nine counts and sentenced to imprisonment for a period of eighteen months on each count, the sentences to run concurrently. The dispositive question presented by this appeal is whether the mailed matter referred to is obscene and therefore not protected by the freedom of speech and press provisions of the First Amendment to the Constitution. We conclude that the publications in question are not obscene within the legal definition of that term.

Haldeman owned and operated a business at Girard, Kansas which printed numerous books and pamphlets relating to sex and various forms of sex deviation, without illustrations, among which were those referred to in the indictment. From these paperback booklets or pamphlets the parties selected eight as typical, and they were introduced in evidence by agreement of the parties and read by the jury. Each booklet has approximately 30 pages of text, and are bound with plain paper backs upon which is printed the subject matter contained therein, and carries the name of "D. O. Cauldwell, M.D." as the author. Seven of the booklets are reproduced questions concerning various sex problems, usually abnormal, written to the author as a sexologist. Each question is followed by the author's answer. Generally the answers are in plain language, with no evident attempt to embellish a sordid subject. The eighth book was a recitation of a variety of experiences during the medical practice of the author, relating to sex matters.[1] In his answers, the author attempted to explain the nature of the sexual activities about which inquiry was made, and in some instances to give the reason for them. All the booklets discuss revolting, nauseating, filthy and disgusting incidents, but they

1. The titles of the booklets are: "Questions and Answers Involving Sexual Ethics and Sexual Esthetics"; "Questions and Answers on Sex and the American Attitude"; "Questions and Answers on Sex Physique Disparity"; "Questions and Answers on the Sex Life and Sexual Problems of Homosexuals of Both Sexes"; "Questions and Answers About Oragenital Contacts"; "Questions and Answers about Cunnilingus"; "Questions and Answers on Undinism"; and "Revelations of a Sexologist".

are no more repulsive than any discussion of the same subjects for medical, scientific, educational or general information purposes. No one contends that the conditions and experiences referred to in the booklets do not exist or continuously confront the medical profession, law enforcement officers, and society, with perplexing problems.[2] The record discloses without contradiction that the forms of sexual behavior described are common problems about which there is considerable literature, including discussions in many text and reference books.[3]

For the past decade the Supreme Court of the United States has struggled with the constitutional question here involved, but it is extremely doubtful if the solution of individual cases has been made any easier by its decisions. It is settled that "obscenity is not within the area of constitutionally protected speech or press." Roth v. United States, 354 U.S. 476, 485, 77 S. Ct. 1304, 1309, 1 L.Ed.2d 1498, rehearing denied Alberts v. State of California, 355 U.S. 852, 78 S.Ct. 8, 2 L.Ed.2d 60. What is obscene and beyond the scope of constitutional protection is ultimately for the courts to determine as a matter of law. Roth v. United States, supra; Jacobellis v. Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793.[4] In determining whether a publication is obscene, the test stated in Roth and restated in Jacobellis is "whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest. * * * " [5] It was recognized in Jacob-

---

**2.** This was attested to at the trial by the testimony of outstanding professors and medical doctors, including psychiatrists, a Protestant minister, and others. These witnesses testified that the booklets discussed in ordinary language common problems and generally reflected accurate medical opinions and had educational value, particularly in the field of psychiatry and family counseling. Doctor Gray, a practicing obstetrician and gynecologist in Kansas, testified as follows:
"Q. Would it be accurate and fair to say that in your fifteen years of practice that patients have related to you subject matter some of which is covered in the pamphlets?
"A. Yes, definitely.
"Q. Of the medical works which you sometimes refer to in your practice, do you have an opinion as to whether your reference material is more frank than the material before you?
"A. Well, yes, it is more frank in that it is perhaps more extensive than this. And, of course, the primary exposition of the—and description of the cases involved comes from say, the letters for example that are contained within these books. His writings in themselves show—merely tend to explain these on a medical basis, and in such a manner reflect accepted medical interpretations. So they—and these books which I had reference are perhaps more exhaustive, more complete. They are using case histories, of course the same—not the answer type of thing, but in case abstract,

and then illustrate the point from that. But it is a sort of valumatic type of thing, most of them are bigger and more involved.
"Q. As a Doctor, do you have an opinion as to whether or not the eight books under indictment have a medical value?
"A. I think they have."

**3.** "Dr. Cauldwell's" books are in the library at the University of Kansas and may be read by those having access to the library.

**4.** In Jacobellis v. Ohio, 378 U.S. 184, 190, 84 S.Ct. 1676, 1679, it was said: "Hence we reaffirm the principle that, in 'obscenity' cases as in all others involving rights derived from the First Amendment guarantees of free expression, this Court cannot avoid making an independent constitutional judgment on the facts of the case as to whether the material involved is constitutionally protected."

**5.** Roth v. United States, 354 U.S. 476, 489, 77 S.Ct. 1304, 1311, and Jacobellis v. Ohio, 378 U.S. 184, 191, 84 S.Ct. 1676. The Supreme Court has accepted the A.L.I. definition of "obscenity" in its proposed Model Penal Code, § 251.4(1), that "Material is obscene if, considered as a whole, its predominant appeal is to prurient interest * * * and if in addition it goes substantially beyond customary limits of candor in describing or representing such matters." Jacobellis v. Ohio, supra, at 192, 84 S.Ct. at 1680. See, also, Manual Enterprises, Inc., v.

ellis that this test is not perfect, but any other would raise equally difficult problems, and the court emphasized that point, stating:

"We would reiterate, however, our recognition in Roth that obscenity is excluded from the constitutional protection only because it is 'utterly without redeeming social importance,' and that '[t]he portrayal of sex, e. g., in art, literature and scientific works, is not itself sufficient reason to deny material the constitutional protection of freedom of speech and press.'" 378 U.S. at 191, 84 S.Ct. at 1680.

 The constitutional status of published materials dealing with sex is to be determined in the light of the effect it has, when taken as a whole, and not by isolated excerpts, upon the average person and not the peculiarly susceptible. Furthermore, it is only obscene when it "goes substantially beyond customary limits of candor" in the description or representation of such matters. The guarantee of the Constitution is not confined to conventional material or to the expression of views shared by a majority of citizens. Kingsley Intern. Pictures Corp. v. Regents, 360 U.S. 684, 79 S.Ct. 1362, 3 L.Ed.2d 1512.

 As we have stated, the eight booklets involved in this case do not make pleasant reading, but we are convinced that it cannot be said that they are utterly without social importance or that their descriptions and representations go substantially beyond customary limits of candor. The undisputed evidence is to the contrary. It would

appear from what was said in Roth and Jacobellis and the decisions which followed that published materials are obscene in a constitutional sense only when they are within the area of "hard core pornography", whatever that term may mean.[6] Times Film Corp. v. City of Chicago, 355 U.S. 35, 78 S.Ct. 115, 2 L. Ed.2d 72; Mounce v. United States, 355 U.S. 180, 78 S.Ct. 267, 2 L.Ed.2d 187; One, Incorporated v. Olesen, 355 U.S. 371, 78 S.Ct. 364, 2 L.Ed.2d 352; Sunshine Book Co. v. Summerfield, 355 U.S. 372, 78 S.Ct. 365, 2 L.Ed.2d 352; Manual Enterprises v. Day, 370 U.S. 478, 84 S. Ct. 1432; Tralins v. Gerstein, State Atty., 378 U.S. 576, 84 S.Ct. 1903, 12 L.Ed.2d 1033; Grove Press Inc. v. Gerstein, State Atty., 378 U.S. 577, 84 S.Ct. 1909, 12 L. Ed.2d 1035; Excellent Publications, Inc. v. U. S., 1 Cir., 309 F.2d 362; Zeitlin v. Arnebergh, 59 Cal.2d 901, 31 Cal.Rptr. 800, 383 P.2d 152, cert. denied 375 U.S. 957, 84 S.Ct. 445, 11 L.Ed.2d 315; Attorney General v. Tropic of Cancer, 345 Mass. 11, 184 N.E.2d 328. The Third Circuit, in United States v. Ginzburg, 3 Cir., 338 F.2d 12, upheld a conviction under Section 1461 after determining that the publications were obscene within the rule of the foregoing cases and not entitled to constitutional protection. However, such cases as United States v. Darnell, 2 Cir., 316 F.2d 813, cert. denied 375 U.S. 916, 84 S.Ct. 205, 11 L.Ed.2d 155, rehearing denied 375 U.S. 982, 84 S.Ct. 493, 11 L.Ed.2d 429; United States v. Zuideveld, 7 Cir., 316 F.2d 873, cert. denied 376 U.S. 916, 84 S.Ct. 671, 11 L. Ed.2d 612; Kahm v. United States, 5 Cir. 300 F.2d 78, cert. denied 369 U.S. 859, 82 S.Ct. 949, 8 L.Ed.2d 18, in which con-

Day, 370 U.S. 478, 485, 82 S.Ct. 1432, 8 L.Ed.2d 639.

Prurient interest is defined as a "shameful or morbid interest in nudity, sex, or excretion." Roth v. United States, supra, 354 U.S. at 487, 77 S.Ct. at 1310. The community standard to be applied is that of the nation as a whole, and not that of a particular locality or area. Jacobellis v. Ohio, supra, 378 U.S. at 195, 84 S.Ct. 1676.

6. Mr. Justice Stewart, concurring in Jacobellis, declined to define the term "hard core pornography", but stated: "I know it when I see it * * *." The writer of this opinion has also felt that he would "know it when he saw it" but a reading of some of the published material held to be constitutionally protected tends to raise doubts regarding one's perceptive abilities in such matters.

victions for violation of the same statute have been upheld, are clearly distinguishable from the case at bar.

Reversed and remanded with instructions to dismiss the indictment.