268 So.2d 488

Doyal A. McKINNEY

v.

CITY OF TUSCALOOSA, a Municipal corp.

6 Div. 352.

Court of Criminal Appeals of Alabama.

Oct. 24, 1972.

Ferris S. Ritchey, Jr., Birmingham, Robert Eugene Smith, Towson, D. Freeman Hutton, Atlanta, for appellant.

J. Wagner Finnell, Glenn N. Baxter, Tuscaloosa, for appellee.

TYSON, Judge.

Appellant was convicted in the Circuit Court of Tuscaloosa County, Alabama, following an appeal from the Recorder's Court, wherein the City of Tuscaloosa charged that appellant did *"after having been served with a prior written notice that there was reasonable cause to believe that the material, upon which the prosecution in this case is based, was in violation of Act No. 698 of the 1969 Legislature of Alabama, knowingly exhibit for a monetary consideration to another a motion picture show or a motion picture film which, in whole or in part, was obscene and represented hard-core pornography, as defined in Act No. 698 of the 1969 Legislature of Alabama,* contrary to the provisions of a valid, existing ordinance of said City of Tuscaloosa. . . ." Judgment fixed punishment at a fine of $100.00, together with a sentence of ninety days hard labor.

On June 29, 1971, at about 8:00 p. m., three police officers of the City of Tuscaloosa, who were dressed in civilian clothes went to the Paris Adult Theatre, located on University Boulevard in Tuscaloosa, Alabama.

One of the officers, a Sergeant Stough, testified that as they entered the theatre, located at or near the cash register was the appellant, Doyal A. McKinney. The officers made an offer to buy tickets, which was refused, and, after identifying themselves as police officers, they entered the theatre over the appellant's protest.

A film called "Girls' School Scandal" was in the process of being shown. The officers, who had carried with them a camera, a video-tape recorder, and other equipment, began a video-tape recording of "Girls' School Scandal." There were nine-

teen patrons in the theatre at the time, none of whom left during the filming. Sergeant Stough stated that they viewed "the last part of the movie" (Girls' School Scandal) and "taped most of the remainder of it." Then followed several "short subjects" with no name or sound. The first of the "short subjects" was filmed in its entirety after which Officer Stough served the following notice (omitting the formal parts) on the appellant:

"TO : Mr. Doyle Alton McKinney, Manager
Paris Theatre
2408 University Boulevard
Tuscaloosa, Alabama

"'You are hereby notified that there is reasonable cause to believe that the motion pictures which you are now showing at the Paris Theatre at 2408 University Boulevard, in the City of Tuscaloosa, violates valid existing ordinances of the City of Tuscaloosa which adopt, by reference, Act No. 698 adopted by the Regular Session of the 1969 Legislature of Alabama, and the provisions thereof.

"'Based on a viewing of the film which was shown on this day, there is reasonable cause to believe that the further showing of such film will be in violation of City ordinances which adopt the aforesaid law and which make it unlawful for any person 'knowingly to exhibit, for a monetary consideration, to another, or knowingly sell to another, an admission ticket or pass, or knowingly to admit another, for a monetary consideration, to premises where there is exhibited a motion picture, show, or other presentation which, in whole or in part, depicts nudity, sexual conduct, or sado-masochistic abuse which is obscene or represents hard-core pornography.'

"' 'Hard-core pornography,' as defined in the aforesaid law and ordinance, means 'material, when considered as a whole, its predominant appeal is to prurient interest, is patently offensive to prevailing or contemporary standards, is utterly

without redeeming social value or importance and in addition it goes substantially beyond customary limits of candor in describing or representing such matters.'

"This the *29* day of *June*, 1971."

After this notice was served, the officers continued their filming of other "short subjects" and another feature film entitled "Winter Sports." Officer Stough then took the video tapes—containing material shown both before and after the notice was served—to Judge Rosen, Tuscaloosa's City Recorder, for his viewing. Judge Rosen, upon being advised that the notice had already been served, but that the officers were continuing their filming, requested to view the additional film, which he did. After viewing a third "short subject" and part of a film called "Winter Sports," the City Recorder issued a warrant of arrest for Doyal McKinney.

Later that night all the films that were being shown in Paris Adult Theatre, along with other films found in the trunk of appellant's automobile, which included "Girls' School Scandal," were confiscated.

The trial court, without a jury, viewed three separate video tapes consisting of material exhibited both prior and subsequent to the giving of the requisite notice to the appellant. This included that portion of "Girls' School Scandal" which was filmed and the short subject which was filmed in its entirety.

The Court's finding was that *all* of the film was obscene and constituted hard-core pornography.

I

We need not here determine the constitutionality of Act No. 698, Acts of Alabama 1969, Regular Session, for we are convinced that the conviction of appellant must be reversed, as the Act in question has not been here constitutionally applied.

We base our holding on two grounds. First, we find that Section 4(a) of Act 698, supra, has not been here followed.

Section 4(a) reads as follows:

"No prosecution may be commenced against any person for violating Sections 2 and 3 of this Act unless the accused is first served with prior written notice that there is reasonable cause to believe the material upon which such prosecution is based violates this Act, *and the accused has, after receiving such notice violated this Act.*" [Italics added.]

The evidence is uncontroverted that the notice given to appellant in accordance with Section 4(a) of the Act was based on a showing of a film entitled "Girls' School Scandal" and one "short subject" not identified by name. Aside from the fact that the film "Girls' School Scandal" was not viewed in its entirety by one empowered to do so to reach a determination of obscenity *vel non,* there is no testimony appearing in the record to indicate that there was a subsequent showing of either of these films, upon which this prosecution *must* be based, *subsequent to the giving of the notice.*

Appellant has correctly pointed out in his brief that the testimony of Officers .Stough and Hampel was that neither viewed either of the films in question after the notice was served, nor was there any investigating to find out if they were in fact shown again. Rather, the evidence shows that neither of these films were exhibited after the notice was given.

The City's attorney conceded this on oral argument of this cause, but argues that the notice requirement of Section 4(a) of the Act in question was intended simply as a safeguard to prevent an innocent person from being arrested and prosecuted for possessing or displaying obscene material, although personally unaware of the pornographic content of such material. In so interpreting Section 4(a), the City of Tuscaloosa is apparently relying on the finding of the trial judge, who, after a *trial de novo* of this cause, issued the following order:

"The Defendant, however, insists that after service of the notice he ceased showing of the film and cannot be prosecuted for the subsequent showing of the other films since he had received no notice based upon a determination of the obscenity *vel non* of the subsequent films. Such a strict interpretation of Section 4 of Act No. 698 would destroy the ability of law enforcement officials to enforce the provisions of the Act. The serving of the notice is designed to protect from prosecution a proprietor who is unaware of the contents of materials in his possession. But to allow one to skirt the law by overly strict interpretation of its provisions would render the law a nullity. The *quid pro quo* substitution of 'Winter Sports' for 'Girls' School Scandal' will not save this Defendant from conviction."

Such an interpretation of the notice provision of this Act would mean, and the City of Tuscaloosa so contends, that appellant should be convicted, although he has ceased exhibiting those films, about which he has received notice, apparently on the unwarranted and we feel unconstitutionally permissible assumption that the remainder of the films which appellant had in his possession were also obscene, and the showing of any one (as to which no viewing or notice has been given) which may *subsequently* be determined to be obscene, may form the basis for a criminal prosecution under this Act.

In this regard we find ourselves in accord with the following statement found in appellant's brief: "If the statute can be applied in this manner then it is no overstatement to say that the section requiring notice before commencement of a prosecution based on the materials the subject of the notice means nothing."

■ Our interpretation of the statute— indeed, we believe the constitutionally acceptable construction—is that Act 698, supra, purports only to regulate the distribution of material, i. e., here motion pictures,

as to which there has been a viewing, a determination of obscenity by those empowered to make such a finding, and proper notice given to the distributor in relation thereto. It is thus the *subsequent* showing of that *same film* or films *after receiving such notice* which forms the basis for a criminal prosecution.

Any other interpretation of this statute would run afoul of what the United States Supreme Court said in Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584:

"We held in Alberts v. State of California, decided with Roth v. United States, 354 U.S. 476, 485, 77 S.Ct. 1304; 1309, 1 L.Ed.2d 1498, that 'obscenity is not within the area of constitutionally protected speech or press' and may therefore be regulated by the States. But his principle cannot be stated without an important qualification:

"* * * [I]n Roth itself we expressly recognized the complexity of the test of obscenity fashioned in that case and the vital necessity in its application of safeguards to prevent denial of 'the protection of freedom of speech and press for material which does not treat sex in a manner appealing to prurient interest.' [354 U.S. at 488, 77 S.Ct. at 1311] * * * It follows that, under the Fourteenth Amendment, a State is not free to adopt whatever procedures it pleases for dealing with obscenity * * * without regard to the possible consequences for constitutionally protected speech.' Marcus v. Search Warrant, [S of Prop. at 104 East 10th St., Kansas City, Mo.,] 367 U.S. 717, 730–731, 81 S.Ct. 1708, 1715, 1716, 6 L.Ed.2d 1127."

We feel our interpretation of Act 698, supra, to be the only construction which will ensure against the curtailment of constitutionally protected expression, which is often separated from obscenity only by a fine line. As stated in Speiser v. Randall,

357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460:

"[T]he line between speech unconditionally guaranteed and speech which may legitimately be regulated . . . is finely drawn. . . . The separation of legitimate from illegitimate speech calls for . . . sensitive tools. . . ."

■ The evidence clearly indicates that there was no subsequent showing of those films, which were the subject of the notice given. We hold that the police officers of the City of Tuscaloosa did not follow the procedural safeguards of Act 698, supra.

## II

■ It is next urged as error that since one of the films found to be obscene and made the basis for this prosecution was at no time viewed in its entirety by the trial judge, prior or subsequent to the giving of the notice, the constitutionally relevant test for obscenity was not here met, citing Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498.

Obscenity was defined in *Roth* in the following terms:

"Whether to the average person, applying contemporary community standards, the dominant theme of the material *taken as a whole* appeals to prurient interest." [Italics added.]

In so doing, the Supreme Court in *Roth* quoted with approval the trial judge's instructions to the jury, which were in pertinent part as follows:

" 'The test in each case is the effect of the book, picture or publication considered as a whole, not upon any particular class, but upon all those whom it is likely to reach. In other words, you determine its impact upon the average person in the community. The books, pictures and

circulars must be judged as a whole, in their entire context, and you are not to consider detached or separate portions in reaching a conclusion. . . .' "

In the instant case, the trial judge rejected the established rule in this fashion:

"Defendant's counsel further argues that the Court cannot determine the question of obscenity *vel non* of the two feature films because the Court neither reviewed the first portion of 'Girls' School Scandal' nor the final portion of 'Winter Sports.' Therefore, counsel argues, the Court may have missed portions which might have contained elements constituting redeeming social value. Suffice it to say that, in the opinion of this Court, the inclusion of a full fledged recital of the United States Constitution by Richard Burton could save neither of these films."

We cannot accept this rationale, nor the City's rationale that "hard-core pornography remains hard-core pornography whether viewed in part or in whole," when the clear import of the Supreme Court's holdings is to the effect that the *material* must *be viewed as a whole* in order to reach a determination of obscenity. We are of the opinion that the phrase "viewed as a whole" must be taken in its literal sense until the United States Supreme Court determines otherwise.

We pretermit consideration of other claims of error, as we do not believe such will arise again.

For the reasons as hereinabove set out, this cause is due to be and the same is hereby

Reversed and remanded.

CATES, P. J., and ALMON, J., concur.

HARRIS and DeCARLO, JJ., concur in the result.