276 So.2d 629

**David Lee BUSH and Doyal Alton McKinney**

v.

**CITY OF TUSCALOOSA.**

**6 Div. 318.**

Court of Criminal Appeals of Alabama.

April 17, 1973.

Ferris S. Ritchey, Birmingham, Robert Eugene Smith, Towson, Md., D. Freeman Hutton, Atlanta, Ga., for appellants.

J. Wagner Finnell, and Glenn N. Baxter, Tuscaloosa, for appellee.

PER CURIAM.

The cases against the appellants were by agreement consolidated for trial in the trial court. Each of the appellants was charged with a violation of an ordinance of the City of Tuscaloosa which provides as follows:

"It shall be unlawful for any person to commit any offense within the city or within its police jurisdiction which is declared, by an existing or future law or laws of the state to be a misdemeanor."

Under that ordinance the complaints charge the appellants with the violation of Act No. 698 of the 1969 Legislature of Alabama. The evidence in the case relates to Section 3 of said Act.

The trial resulted in a conviction of each appellant and judgment in accordance with punishment fixed at a fine of $100.00 and hard labor for the City for one hundred and eighty days.

J. Dempsey Marcum, a Detective of the Police Department of the City of Tuscaloosa, testified in substance that the Paris Adult Theatre in Tuscaloosa was on and around June 16, 1971, operated by Doyal McKinney as manager, and David Bush as

projectionist; that he saw McKinney selling tickets in that theatre on June 16; that the theatre was open for business; that he saw David Bush operating the projector in the theatre; that he did not go to the theatre on June 15; that he went there on June 16; that he had been to the theatre prior to June 15; that he was present with the chief of police and viewed a videotaped recording of a film that was shown at the theatre on June 15; that after viewing the videotape of that film the chief of police gave him a notice addressed to Doyal McKinney to be served on McKinney; and that he served that notice on McKinney at 4:40 P. M. on June 15. That notice was offered and admitted in evidence over objection as City's Exhibit A. It is as follows:

"STATE OF ALABAMA    }
CITY OF TUSCALOOSA  }

"TO: Mr. Doyle Alton McKinney,
      Manager
      Paris Theatre
      2408 University Boulevard
      Tuscaloosa, Alabama

"You are hereby notified that there is reasonable cause to believe that the motion pictures which you are now showing at the Paris Theatre at 2408 University Boulevard, in the City of Tuscaloosa, violates valid existing ordinances of the City of Tuscaloosa which adopt, by reference, Act No. 698 adopted by the Regular Session of the 1969 Legislature of Alabama, and provisions thereof.

"Based on a viewing of the film which was shown on this day, there is reasonable cause to believe that the further showing of such film will be in violation of City ordinances which adopt the aforesaid law and which make it unlawful for any person 'knowingly to exhibit, for a monetary consideration, to another, or knowingly sell to another, an admission ticket or pass, or knowingly to admit another, for a monetary consideration, to premises where there is exhibited a motion picture, show, or other presentation which, in whole or in part, depicts nudity, sexual conduct, or sado-masochistic abuse which is obscene or represents hard-core pornography'.

" 'Hard-core pornography', as defined in the aforesaid law and ordinance, means 'material, when considered as a whole, its predominant appeal is to prurient interest, is patently offensive to prevailing or contemporary standards, is utterly without redeeming social value or importance and in addition it goes substantially beyond customary limits of candor in describing or representing such matters'.

"This the 15th day of June, 1971.

          "/s/ William M. Marable
            William M. Marable,
            Chief of Police,
            City of Tuscaloosa,
            Alabama.

"I have served a copy of the foregoing Notice, duly signed by William M. Marable, Chief of Police of the City of Tuscaloosa, on Mr. Doyle Alton McKinney, Manager of the Paris Theatre, on this the 15 day of June, 1971, by handing a copy of the same to ——————, at 4:40 o'clock, P. M.

          "/s/ J. Dempsey Marcum
            Police Officer,
            City of Tuscaloosa"

This witness further testified in substance that he did not serve the notice on the appellant, David Lee Bush; that he did not see the picture that was shown at said theatre on June 15; that he only saw the videotape of the film; that he went to the theatre on June 16 at 4:05 P.M. and observed the film then being shown; that it was a movie entitled, "Divorce Las Vegas Style;" that he watched it until 4:20 P. M.; that the notice was served on June 15 with reference to a movie entitled, "Women for All Reasons;" that he saw that

movie on June 11 at that theatre and there were some short subjects shown on June 11 which had no dialogue, just music in the background; that those films were confiscated on June 16; that he did not go back into the theatre prior to June 15; that the movie and short subjects were videotaped and shown to the chief of police; that after the chief of police viewed the videotapes of the film, "Women for All Reasons," and said short subjects, he was given the notice to serve on McKinney and he served it on McKinney at the police station; that McKinney was arrested the following day on June 16; that at the time of the arrest they seized the film which was on the projector which was, "Divorce Las Vegas Style;" that he did not know if the film "Women for All Reasons," was shown after the notice was served on McKinney; that the film being shown on June 16 was not the film the chief of police saw the videotape of just before the notice was given to him to serve; that he seized at the time of the arrest the films, "Women for All Reasons," "Divorce Las Vegas Style," and shorts; that the only notice he knew anything about was the one he served on June 15 and that he did not see the shorts being shown on June 16.

Adolph South, a Detective of the Tuscaloosa Police Department, testified in substance that on June 16 he viewed the film being shown at the said theatre entitled, "Divorce Las Vegas Style," and short subjects; that he left the theatre and secured a search warrant; that he discussed the films he had seen with Judge Rosen before getting the search warrant and he made an affidavit to get the warrant; and that he also secured a warrant of arrest at the same time for the appellants. The affidavit he executed to secure the search warrant was admitted in evidence over objection and is as follows:

"CITY'S EXHIBIT B

"AFFIDAVIT FOR SEARCH WARRANT

"STATE OF ALABAMA
CITY AND COUNTY OF TUSCALOOSA } IN THE RECORDER'S COURT

"Before me, Gorden Rosen, Recorder of the City of Tuscaloosa, in said County and State, personally appeared E. A. South, a police officer of the City of Tuscaloosa, Alabama, who being by me first duly sworn, deposes and says that he has reason to believe the following:

"1. That Doyal Alton McKinney, the Manager of the Paris Theatre, at 2408 University Boulevard, Tuscaloosa, Alabama, has concealed at the offices in the Paris Theatre, namely, the projection or showing room thereof, in the Corporate Limits of the City of Tuscaloosa, Alabama, certain motion picture films which, in whole or in part, depict nudity, sexual conduct, or sado-masochistic abuse, which is obscene or represents hard-core pornography, all as defined in Act No. 698 of the Regular Session of the 1969 Legislature of Alabama, the showing of which film to another for a monetary consideration is contrary to valid existing ordinance of the City of Tuscaloosa, and that said film is required and necessary as evidence in connection with the prosecution of a case in the Recorder's Court of the City of Tuscaloosa, arising out of the aforesaid City ordinance which adopts, by reference, the provisions of said Act No. 698.

"The facts on which this affidavit is based are as follows:

"I have personally seen and witnessed the showing of one or more films at the Paris Theatre. These films were know-

ingly exhibited for a monetary consideration to others, and the films depicted nudity of both males and females, sexual conduct, both normal and abnormal, and the same is obscene and, when considered as a whole, its predominant appeal is to the prurient interest, it is patently offensive to prevailing or contemporary standards and, in my judgment, is utterly without redeeming social value or importance and, in addition, it goes substantially beyond customary limits of candor in describing or representing aspects of natural and un-natural sex.

"I have also, after purchasing a ticket to enter the Theatre, made certain reproductions of portions of said film, which are now presented to the Court for viewing.

"Based on the above information, I know that the above film, which has been illegally displayed for a consideration to the public, is being concealed on the premises described above, with the intent to further use the same in commission of a public offense, and that the same is necessary in the prosecution of a case in the Recorder's Court of Tuscaloosa, arising out of the illegal showing of said film.

"/s/ E. A. South
Affiant

"Sworn to and subscribed before me this 16th day of June, 1971.

"/s/ Gordon Rosen
Recorder, City of Tuscaloosa."

This witness further testified in substance that Judge Rosen was shown a videotape of the picture being shown at the theatre on June 16 before he issued a search warrant. During this witness's testimony, the following took place:

"MR. RITCHEY: I move to exclude this man's testimony as not having any-

thing material to go with this particular case.

"MR. FINNELL: Your Honor, I think counsel misconstrued the case. This is what he did contrary to law on the 16th day of June. The witnesses are testifying what was shown on the 16th day of June and what transpired on the 16th day of June. The only reason 15th got in on it was based on the showing of a film and certain unnamed shorts that a notice was given that to show any more of that type thing was a violation of the law, which he did on the 16th and Officer South saw it on the 16th and as a result of what he saw on the 16th he went to the Judge, and this is an offense for what he did on the 16th.

"THE COURT: I am a little bit confused on the two films, that is the film 'Women For All Occasions' and 'Divorce Las Vegas Style,' but I will overrule.

"MR. RITCHEY: Your Honor, may I make this further comment? The search warrant, the affidavit for the search warrant that Detective South signed, this was the reason I stated to Your Honor earlier about the demurrers, that I don't know what we are called on to defend. It is not spelled out. This search warrant says he saw certain films. Now he arrested this man and the case we are trying now and referring to has to do with the showing of the film 'Woman For All Reasons'.

"MR. FINNELL: No, that is where you are wrong. It has to do with the showing of the film on the 16th day as it states right there.

"MR. RITCHEY: Which film?

"MR. FINNELL: There were certain short subjects and also the one he just testified about.

"MR. RITCHEY: 'Divorce Las Vegas Style'?

"MR. FINNELL: 'Divorce Las Vegas Style,' yes.

"MR. RITCHEY: Are you saying the film, that this trial for this case number, whatever the case numbers are—12105 and 12110—are dealing with the film 'Divorce Las Vegas Style'?

"MR. FINNELL: Yes, on the 16th.

"MR. RITCHEY: Are they also dealing with 'Woman For All Reasons' "

"MR. FINNELL: Of course not.

"MR. RITCHEY: We are not dealing with the film 'Woman For All Reasons' ".

"MR. FINNELL: Of course not. He didn't show them on the 16th.

"MR. RITCHEY: Then I move to exclude the Detective Marcum's testimony because his testimony dealt with 'Woman For All Reasons' and not 'Divorce American Style.'

"THE COURT: I will overule. I will have to hear all the evidence. I am a little bit confused."

It is completely clear that the City of Tuscaloosa elected to prosecute the appellants for showing the film entitled "Divorce Las Vegas Style" and certain short subjects on June 16, and that said appellants were tried and convicted for showing said films on said date. It is also equally clear that the notice served on the appellant McKinney did not cover said films, but only covered the material contained in the films shown on June 15. From ought that appears in the evidence in this case, the appellant ceased the showing complained of in the notice served upon its receipt on June 15. It is clear that the films shown on June 15 were not shown on June 16.

The witness South further testified with reference to notice as follows:

"Q. Did you serve him with a notice similar to the one Mr. Marcum testified to, which is City's Exhibit A in this case, informing him that if he were to continue showing the film which you saw on June 16th that he would be placed under arrest, in substance?

"A. No, sir, I did not. I served him —

"Q. You served only the arrest warrant and the search warrant?

"A. I did not serve either the arrest warrant or the search warrant. I served Mr. McKinney with a notice on the 17th after viewing another film—

"Q. Well, you didn't serve him with any notice with reference to the film 'Divorce Las Vegas Style'?

"A. No, sir, I did not.

"Q. If I understand you correctly, that is the film for which the film and short subject film, were the films for which you obtained a search warrant and an arrest warrant and for which we are trying this case now.

"A. Yes, sir, it was my understanding the notice he had been served on the 15th warned him against showing any such films.

"Q. Any such films?

"A. Yes, sir.

"Q. Did you interpret that to mean that any film he showed in that theatre thereafter would be covered by that notice?

"A. Depicting nudity and sexual obscenity, yes, sir."

Apparently the affidavit executed to obtain the search warrant on June 16, 1971, was introduced into evidence for the purpose, among others, of showing notice to appellants but it was not shown to either appellant prior to their arrest.

Section 4, Subsection (a) of Act No. 698, Acts of Alabama, Special and Regular Sessions, 1969, Vol. II, pages 1254 and 1255, is as follows:

"Section 4. (a) No prosecution may be commenced against any person for vio-

lating Sections 2 and 3 of this Act unless the accused is first served with prior written notice that there is reasonable cause to believe the material upon which such prosecution is based violates this Act, and the accused has, after receiving such notice violated this Act."

 The notice in the instant case was served on the appellant McKinney but it was not served on the appellant Bush. Certainly appellant Bush could not be prosecuted without being served with the notice required by the statute, and service on McKinney was not notice to Bush. It is noted that the notice served on McKinney directed his attention to "the motion pictures you are now showing at the Paris Theatre." The statute in question provides that "written notice that there is reasonable cause to believe the material upon which such prosecution is based violates the Act" must be served prior to prosecution. The person preparing said notice could not have intended that the notice should cover material to be shown in the future for he would have no knowledge of the content of "the material" contained therein. We must reject the claim of the City of Tuscaloosa that the notice served on the appellant McKinney covered the films shown the next day after it was served. So far as is disclosed by this evidence, the notice served on June 15, 1971, was the first of such notices. This is not a case of repeated prior notices and repeated evasions. The statutory pronouncements as to notice is clear and unambiguous. Notice is a condition precedent to prosecution. McKinney v. City of Tuscaloosa, 49 Ala.App. 21, 268 So.2d 488. There being no notice to either appellant as to the films shown on June 16, 1971, the City could not proceed to prosecute.

At the conclusion of the evidence offered by the City, the appellants moved to exclude the evidence and acquit the appellants. That motion was overruled by the trial court. The trial court was in error in so ruling.

It is ordered and adjudged by this Court that for the error noted the judgment in this cause be reversed and the cause rendered and the appellants discharged.

Reversed and rendered.

All the Judges concur.