**Brenda Gail GOOCHER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 60539.**

Court of Criminal Appeals of Texas, Panel No. 2.

March 10, 1982.

Rehearing Denied April 14, 1982.

---

Kenneth W. Boyd and Michael J. Rogers, Cleburne, for appellant.

Dan M. Boulware, County Atty., Wayne Bridewell, Asst. County Atty., Cleburne, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and TOM G. DA-VIS and CLINTON, JJ.

## OPINION

CLINTON, Judge.

This is an appeal from a conviction for the offense of commercially exhibiting obscene materials under former V.T.C.A. Penal Code, § 43.23(a)(1). The jury assessed punishment at confinement in the county jail for 180 days and a fine of $200.00, but recommended probation.

In appellant's first ground of error she challenges the sufficiency of the evidence to sustain the conviction. Specifically, she complains that the State's evidence failed to show the whole of the material. A review of the facts is necessary.

Deputy Sheriff D. J. Moulder attended a showing at the Trail Drive-In on the evening of December 5, 1977 in Johnson County where the movies "Cherry Truckers," "Fulfillment," and an unnamed film were playing. Moulder purchased a ticket from appellant, watched all three features and, the following day, consulted with the district attorney regarding institution of criminal charges against the employees of the theater. Moulder procured arrest warrants and a search warrant describing all three films from a Justice of the Peace in Alvarado and again proceeded to the Trail Drive-In; he purchased a ticket for admission from appellant. At some point in the evening while watching the films, Moulder went to the snack bar where he observed two other people, Mrs. Acevedo and Bauldwin, serving refreshments. After purchasing a hamburger and a Coke, Moulder returned to his car and watched the remainder of the films. After watching all three films, Moulder executed the arrest warrants by taking appellant, Mrs. Acevedo and Bauldwin into custody. In addition Moulder arrested Mr. Acevedo, who was standing

in the doorway between the snack bar and the projection room.[1] All three films were confiscated. As part of the presentation of the State's case, the jury viewed "Cherry Truckers" and "Fulfillment."[2]

In appellant's first ground of error, she claims that the evidence is insufficient because the material was not considered as a whole. Appellant asserts that since Moulder paid a single admission price for all three films, the jury should have considered all three films in making its determination of obscenity.

V.T.C.A. Penal Code, § 43.23, provided in relevant part:

"(a) A person commits an offense if, knowing the content of the material:
(1) he sells, commercially distributes, commercially exhibits, or possesses for sale, commercial distribution, or commercial exhibition any *obscene* material;"[3]

"Obscene" was defined in V.T.C.A. Penal Code, § 43.21 as meaning:

"(1) . . . having as a whole a dominant theme that:
(A) appeals to the prurient interest. . .;
(B) depicts or describes sexual conduct in a patently offensive way. . .;

(C) lacks serious literary, artistic, political, or scientific value."

The concept of examining the material as a whole was first enunciated in the Supreme Court's decision of *Roth v. United States*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). In *Roth, supra,* the court finally rejected the concept, stemming from *Regina v. Hicklin,* [1868] LR.3Q. 360, that obscenity could be judged on the basis of an isolated excerpt from the material.[4] Instead, *Roth* substituted the requirement that material could be obscene if, and only if, the "dominant theme of the material taken as a whole" would appeal to the prurient interest. Although the test for obscenity set forth in *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), omits the phrase "dominant theme," the "as a whole" concept is retained and it is clear that the meaning remains the same.

Lower courts have consistently upheld the principle of *Roth* that isolated excerpts cannot in any way be a basis for a finding of obscenity. Thus, a pattern of seizures by police, admittedly based on "indicators" such as bare breasts or buttocks, has been held to be impermissible, since one objectionable picture cannot render an entire

---

**1.** Acevedo, appellant and Mr. Armando Acevedo were all arrested. All four were subsequently convicted in a joint trial. The Acevedos and Bauldwin, however, have been treated separately in their appeals. See Cause Nos. 60,536–38, this day decided.

**2.** We note in passing that the two films were introduced into evidence without first having been viewed by the court out of the jury's presence to determine the films' admissibility. See *Cotlar v. State,* 558 S.W.2d 16 (Tex.Cr.App. 1977).

**3.** All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

**4.** This case stems from an order issued by the Wolverhampton magistrates, pursuant to Lord Campbell's Act, calling for the destruction of 252 copies of an anti-Catholic pamphlet published by Henry Scott entitled *The Confessional Unmasked; Showing the Depravity of the Ro-*

*man Priesthood, the Inequity of the Confessional, and the Questions Put to Females in Confession,* since it was rather explicit in its recitation of events in the confessional. Scott appealed to Wolverhampton Quarter Sessions, where the recorder, Benjamin Hicklin, reversed the decision on the grounds that although the work was obscene, its publication was an innocent one, in that Scott only desired to promote the objectives of the Protestant Electoral Union. This decision was then appealed to the Queen's Bench. The court discussed the question of intent and motive at great length, finally deciding that the intent was irrelevant as long as the work itself was obscene. Since obscenity per se had been decided in the earlier proceedings, this disposed of the case, but Lord Chief Justice Cockburn, in dicta, went on to say that obscenity *could* be decided on the basis of certain *passages, not necessarily the entire work.* Thus, the test was based upon the effect of certain passages on particularly susceptible individuals, and not the public as a whole.

publication obscene.[5] Similarly, it has been held that since isolated episodes are insufficient, an arrest made on the basis of an offense committed in the presence of an officer requires the officer to have seen the *entire* motion picture.[6] Each motion picture or single book is considered a "unit of perception." This principle applies to trials as well as preliminary proceedings, and thus since a finding of obscenity must be based on the worth as a whole, the judge, or jury must see the entire motion picture or consider the entire book.[7]

■ Likewise, in the instant case, the State was only required to present evidence to sustain those allegations contained in the information. The record indicates that the jury viewed "Cherry Truckers" and "Fulfillment" in their entirety, but did not view the untitled film. The State, exercising its right, chose not to charge appellant with commercially exhibiting the third untitled film. As such, the third film was neither relevant nor material to any issue in appellant's trial.[8]

Appellant's first ground of error is overruled.

In appellant's second ground of error she contends that the trial court erred by denying her a speedy trial under Article 32A.02, V.A.C.C.P. In the instant case, the complaint and information against appellant were executed December 6, 1977. The docket sheet reveals that on June 20, 1978, an announcement of ready for trial was made. On July 12, 1978, a pretrial conference was held at which appellant moved for dismissal for failure of the State to grant them a speedy trial. Appellant's motion was overruled by the trial court.

Article 32A.02, V.A.C.C.P., provides that the court should grant a motion to set aside an information if the State is not ready for trial within *60* days of the commencement of a criminal action and if the defendant is accused of a misdemeanor punishable by a sentence of imprisonment for 180 days or less.

Appellant contends that since she was charged with the offense of exhibiting commercial obscenity, a Class B misdemeanor punishable by imprisonment for 180 days or less, she was entitled to be brought to trial by the State within 60 days. She argues that the State waited 178 days before it announced ready for trial, and 212 days elapsed before the case was actually called to trial. Since appellant claims to have neither waived her rights to a speedy trial nor moved for a continuance, she claims the State's delay entitles her to a dismissal. We disagree.

■ The effective date of the Speedy Trial Act was July 1, 1978. In *Wade v. State*, 572 S.W.2d 533 (Tex.Cr.App.1978), the Court held that the time limits prescribed by Article 32A.02, V.A.C.C.P., began to run on July 1, 1978 for all criminal cases then pending on the trial court's docket. Judge Dally, writing for the Court, stated: "In determining whether a motion to set aside an indictment should be granted in cases pending on July 1, the time which elapsed prior to that date is not to be con-

5. *In re Louisiana News Company*, 187 F.Supp. 241, 246 (E.D.La.1960).

6. *Cambist Films Inc. v. Duggan*, 298 F.Supp. 1148, 1152 (W.D.Pa.1969), rev'd on other grounds, 420 F.2d 687 (3rd Cir. 1969); *Hosey v. City of Jackson*, 309 F.Supp. 527, 534 (S.D. Miss.1970), vacated on other grounds, 401 U.S. 987, 91 S.Ct. 1221, 28 L.Ed.2d 525 (1971); *Hanby v. State*, 479 P.2d 486, 493 (Alaska 1970).

7. *Zenith International Film Corp. v. City of Chicago*, 291 F.2d 785, 789 (7th Cir. 1961); *Haldeman v. United States*, 340 F.2d 59, 62 (10th Cir. 1965); *McKinney v. Tuscaloosa*, 49 Ala.App. 21, 268 So.2d 488, 492 (1972); *Bryers v. State*, 480 S.W.2d 712, 717–719 (Tex.Cr.App. 1973); *Bourland v. State*, 502 S.W.2d 8, 9 (Tex. Cr.App.1973); *United States v. West Coast News Co.*, 228 F.Supp. 171, 178 (W.D.Mich. 1964) aff'd, 357 F.2d 855 (6th Cir. 1966), rev'd on other grounds.

8. It is interesting to note that the record indicates appellant was free to introduce the third film into evidence as part of her case-in-chief, but choose not to do so.

sidered." It is clear from the record before us that appellant filed her motion to set aside the information *only* twelve days after the Speedy Trial Act went into effect. Since the State brought appellant to trial within 24 days, she was not denied her statutory right to a speedy trial.

Ground of error number two is overruled.

Appellant next asserts that the prosecutor made an improper jury argument. She says the prosecutor attempted to inject a fact not in evidence. During the State's closing argument at the guilt stage of the trial, the prosecutor made the following comment:

"Where are the owners? The owner is in New York, Ladies and Gentlemen."

Appellant objected. The trial court sustained the objection and an instruction to disregard was given. Appellant's motion for mistrial was overruled.

An argument will not constitute reversible error unless, in light of the *record as a whole*, the argument is extreme or manifestly improper, violative of a mandatory statute or injects new facts, harmful to the accused into the trial proceedings. *Todd v. State*, 598 S.W.2d 286 (Tex.Cr.App. 1980); *Simpkins v. State*, 590 S.W.2d 129 (Tex.Cr.App.1979); *Kerns v. State*, 550 S.W.2d 91 (Tex.Cr.App.1977). Certainly the State's informing the jury that the owner of the Trail Drive-In was in New York injected *new facts* into the trial. While such a statement may constitute error, we cannot say, however, that such error was harmful to appellant. Our reading of the record as a whole reveals that appellant sold admission tickets to Deputy Sheriff D. J. Moulder on both the evening of December 5 and December 6, 1977. In light of appellant having been charged with *aiding* the commercial exhibition of obscenity under Article 43.23, supra, we do not perceive the prosecutor's argument to have been extreme or manifestly improper. See *Little v. State*, 567 S.W.2d 502 (Tex.Cr.App.1978); *Taylor v. State*, 550 S.W.2d 695 (Tex.Cr.

App.1977). See also *Todd v. State*, supra; *Hardeman v. State*, 552 S.W.2d 433 (Tex.Cr. App.1977); *Mims v. State*, 466 S.W.2d 317 (Tex.Cr.App.1971); *Hoover v. State*, 449 S.W.2d 60 (Tex.Cr.App.1969). *Cf. Stearn v. State*, 487 S.W.2d 734 (Tex.Cr.App.1972). The sustaining of appellant's objection followed by an instruction to the jury to disregard the prosecutor's comment sufficiently cured the latter error.

Ground of error number three is overruled.

In ground of error number four appellant contends that the prosecutor made an improper jury argument during the punishment phase of the trial. During the State's argument to the jury in the punishment phase of the trial the prosecutor stated:

"I am asking you to enforce it. I'm asking you to do what needs to be done to send these type of people a message to tell them we're not tolerating this type of behavior in our county."

Appellant objected on the basis that the State was asking the jurors to punish because of what someone in the county thinks should be tolerated. The trial court overruled the objection. Appellant then requested the jury be instructed to disregard and moved for a mistrial. Both the request and the motion were overruled.

The Court has held in the past that an unsworn assertion by the prosecutor, as to the expectations or demands of the community for a particular result constitutes reversible error, and cannot be cured by instruction to the jury to disregard. *Bothwell v. State*, 500 S.W.2d 128 (Tex.Cr.App. 1973); *Pennington v. State*, 171 Tex.Cr.R. 130, 345 S.W.2d 527 (1961); *Cox v. State*, 157 Tex.Cr.R. 134, 247 S.W.2d 262 (1952); *Porter v. State*, 154 Tex.Cr.R. 252, 226 S.W.2d 435 (1950).

We conclude the prosecutor's statements here were not an appeal based on unproven sentiments of the community, unlike those which the Court has held to be reversible

error.[9] We hold the prosecutor's comments did not constitute reversible error. Compare *Bolding v. State,* 493 S.W.2d 181 (Tex. Cr.App.1973); *Hendrix v. State,* 474 S.W.2d 230 (Tex.Cr.App.1971); *Spencer v. State,* 466 S.W.2d 749 (Tex.Cr.App.1971); *McDaniel v. State,* 461 S.W.2d 603 (Tex.Cr.App. 1970); *Perbetsky v. State,* 429 S.W.2d 471 (Tex.Cr.App.1968).

Appellant's fourth ground of error is overruled.

In appellant's fifth and final ground of error she asserts that V.T.C.A. Penal Code, § 43.21(1), is void for vagueness in that it fails to articulate or describe what is patently offensive, thereby depriving appellant of her first amendment right to freedom of speech under the Constitution of the United States.

■ A statute is void for vagueness if it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute, *Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); *United States v. Harriss,* 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1953), and if it encourages arbitrary and erratic arrests and convictions. *Papachristou v. City of Jacksonville,* supra; *Thornhill v. Alabama,* 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940); *Herndon v. Lowrey,* 301 U.S. 242, 57 S.Ct. 732, 81 L.Ed. 1066 (1937).

■ Since amended, § 43.21, supra, the statute at the time of trial provided in pertinent part:

"In this subchapter:

(1) 'Obscene' means having as a whole a dominant theme that:

(A) appeals to the prurient interest of the average person applying contemporary community standards;

(B) depicts or describes sexual conduct in a *patently offensive way*;[10] and

(C) lacks serious literary, artistic, political, or scientific value."

Furthermore, in subsection 6, § 43.21, supra, "sexual conduct" is defined as:

"(A) any contact between any part of the genitals of one person and the mouth or anus of another person;

(B) any contact between the female sex organ and the male sex organ;

(C) any contact between a person's mouth or genitals and the anus or genitals of an animal or fowl; or

(D) patently offensive representations of masturbation or excretory functions."

Appellant complains not of the four types of sexual conduct listed in § 43.21, supra, but of the statutory requirement that these specified types of conduct be depicted in a *patently offensive way.* The concept "patently offensive" was not defined in the statute. Therefore, appellant argues that § 43.21 fails to state *when* sexual conduct of the type described becomes patently offensive.

The statutory definition of "obscenity," § 43.21(1), in both V.A.P.C. (1977), in effect at the time of the instant offense and V.A. P.C. (1979) in effect now, tracks word-for-word the language of the Supreme Court in *Miller,* supra. Chief Justice Burger, writing for the Court in *Miller,* 413 U.S. at 37, 93 S.Ct. at 2622, stated: ". . . that *obsceni-*

**9.** For example, the statement on which *Pennington, id.,* at 528, was reversed was: "The people of Nueces County expect you to put this man away." The State's argument in *Cox,* 247 S.W.2d at 263, was: "The people of DeSoto are asking the jury to convict this man."

**10.** It is interesting to note that the statute as amended by the Texas Legislature in 1973 defined "patently offensive" according to the standards enunciated by the Supreme Court in *Roth,* supra. In 1975, the Legislature once

again amended § 43.21. This time the phrase "patently offensive" was not defined. Legislative history of this amendment indicates it was the Legislature's intent to track the language of the Supreme Court's 1973 decision in *Miller,* supra. The most recent amendment to § 43.21, supra, was in 1979. The current statute now defines "patently offensive" in terms of "affronting community standards." See V.T.C.A. Penal Code, § 43.21(a)(4).

*ty* is to be determined by applying 'contemporary community standards,' ..." Quoting from *Roth*, supra, the Court in *Miller*, 413 U.S. at 28 n. 10, 93 S.Ct. at 2617 n. 10, wrote:

"Many decisions have recognized that these terms of obscenity statutes are not precise. [Footnote omitted] This Court, however, has consistently held that lack of precision is not itself offensive to the requirements of due process. '... [T]he Constitution does not require impossible standards;' all that is required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices...' *United States v. Petrillo*, 332 U.S. 1, 7–8 [67 S.Ct. 1538, 1541–42, 91 L.Ed. 1877]. These words, applied according to the proper standard for judging obscenity, already discussed, give adequate warning of the conduct proscribed and mark '... boundaries sufficiently distinct for judges and juries to fairly administer the law.... That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense ...' *Id.*, at 7 [67 S.Ct. at 1541, 91 L.Ed. 1877]. See also *United States v. Harriss*, 347 U.S. 612, 624, n. 15 [74 S.Ct. 808, 815 n. 15, 98 L.Ed. 989]; *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 340 [72 S.Ct. 329, 330, 96 L.Ed. 367]; *United States v. Ragen*, 314 U.S. 513, 523–524 [62 S.Ct. 374]; *United States v. Wurzbach*, 280 U.S. 396 [, 378, 86 L.Ed. 383, 50 S.Ct. 167, 74 L.Ed. 508]; *Hygrade Provision Co. v. Sherman*, 266 U.S. 497 [45 S.Ct. 141, 69 L.Ed. 402]; *Fox v. Washington*, 236 U.S. 273 [35 S.Ct. 383, 59 L.Ed. 573]; *Nash v. United States*, 229 U.S. 373 [33 S.Ct. 780, 57 L.Ed. 1232]."

In *Red Bluff Drive-In, Inc. v. Vance*, 648 F.2d 1020 (CA5 1981), the Fifth Circuit Court of Appeals recently affirmed the constitutionality of the majority of the current Texas obscenity statute on similar grounds, stating that most of the statute is grounded in language prescribed or approved in prior Supreme Court obscenity decisions.[11]

We decline to hold that § 43.21(1), supra, was unconstitutionally vague simply because the community is allowed to determine *when* sexual conduct is patently offensive.

Appellant's fifth ground of error is overruled.

The judgment is affirmed.

---

11. The Fifth Circuit Court of Appeals indicated it was abstaining from an adjudication of three provisions of the statute, § 43.21(a)(4), § 43.- 21(a)(5) and § 43.23(e) and (f), pending a determination by the State courts of their constitutionality.