**Robert Edwin DURHAM, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09 85 178 CR.**

Court of Appeals of Texas, Beaumont.

May 14, 1986.

Roger Neil Moss, Lufkin, for appellant.

Ed C. Jones, Co. Atty., Lufkin, for appellee.

## OPINION

BURGESS, Justice.

Appellant was convicted by a jury of Driving While Intoxicated, a misdemeanor. The judge assessed punishment at ninety days confinement in the county jail and a fine of $300.00 dollars. Appellant brings forth three grounds of error.

The first two grounds of error concern the admission of a videotape of appellant. Appellant alleges the trial court erred in admitting the videotape without requiring the State to lay the proper predicate and without allowing appellant to view the videotape out of the presence of the jury prior to its admission. The admission of the videotape is shown in the record thusly:

"[STATE'S ATTORNEY]: Officer, have you had an opportunity after that videotape was made to look at it again?

"[WITNESS]: Yes, sir.

"[STATE'S ATTORNEY]: And does that videotape accurately depict Mr. Durham as he appeared at the police station on the date of October 14th, 1984?

"[WITNESS]: Yes, sir.

"[STATE'S ATTORNEY]: Officer Carnley, I'll ask you to look at this and ask you if this is the label that you put on this videotape?

"[WITNESS]: Yes, sir; it is.

"[STATE'S ATTORNEY]: Your Honor, we would offer the videotape for showing as an example of how Mr. Durham appeared on the date of October 14th, 1984.

"THE COURT: Has it been marked?

"[STATE'S ATTORNEY]: No, sir.

(WHEREUPON STATE'S EXHIBIT NO. 1 WAS MARKED FOR IDENTIFICATION)

"THE COURT: Any objections, [DEFENSE COUNSEL]?

"[DEFENSE COUNSEL]: We would like to view the videotape without the presence of the jury so we can determine whether or not we will have any objections to it.

"THE COURT: Could I see counsel, please.

(WHEREUPON A BRIEF OFF-THE-RECORD DISCUSSION TOOK PLACE AT THE BENCH)

"THE COURT: The objection is overruled. It's admitted as State's Exhibit No. 1. You may proceed, [STATE'S ATTORNEY].

"[STATE'S ATTORNEY]: Your Honor, could we cut the lights in order to show the tape?

"THE COURT: Yes, sir.

(WHEREUPON THE VIDEOTAPE, STATE'S EXHIBIT NO. 1, WAS PLAYED FOR THE JURY)

■ There was no objection made to the trial court concerning the predicate. Only those objections which are urged in the trial court will be considered on appeal. *Beck v. State,* 682 S.W.2d 550 (Tex.Crim.App.1985). Nothing was preserved for review. Ground of error number one is overruled.

Ground of error number two, however, is properly before this court. Appellant relies upon a footnote in *Cotlar v. State,* 558 S.W.2d 16 (Tex.Crim.App.1977), which states:

"Unlike still photographs, which can generally be viewed by the court while the jury is in the box before they are admitted into evidence, moving pictures and slides should be viewed by the court out of the presence of the jury before their admissibility is determined."

■ The procedure urged by this footnote has been reaffirmed by footnote in another motion picture case, *Goocher v. State,* 633 S.W.2d 860 (Tex.Crim.App.1982) and made applicable to videotapes in *Roy v. State,* 608 S.W.2d 645 (Tex.Crim.App.1980). We find no case however requiring a reversal when the procedure is not followed. We decline to reverse in this instance also.

This is especially true when the appellant voiced no objections to any part of the videotape when it was being presented to the jury. If there were no harmful or inadmissible portions of the videotape, there could be no harm in not viewing the videotape prior to ruling on its admissibility. We reiterate the correct procedure is for the trial court to view the videotape outside the presence of the jury to determine its admissibility. In this case, failure to do so is not reversible error. Ground of error number two is overruled.

Ground of error number three complains of the trial court allowing an employee of the Texas Department of Public Safety to give certain opinions about the effects of alcohol on an individual and the various amounts of alcohol consumption which would result in a certain blood alcohol level. The relevant portions of the record are as follows:

"[STATE'S ATTORNEY]: And how are you employed?

"[WITNESS]: I'm employed with the Texas Department of Public Safety as a technical supervisor in the breath alcohol testing program.

\* \* \* \* \* \*

"[STATE'S ATTORNEY]: Next I have an easy question. Please tell the jury and the Court how the intoxilizer instrument operates.

"[WITNESS]: Okay. I can—

"[DEFENSE COUNSEL]: Your Honor, we'll admit that the intoxilizer works properly, and that she's qualified to operate the machine, and that she knows how it operates.

\* \* \* \* \* \*

"[STATE'S ATTORNEY]: What would you expect for a person who blew a .21 as far as their physical and mental faculties are concerned? How would you expect that amount of alcohol to effect a person?

"[DEFENSE COUNSEL]: I object, your Honor. This witness has not be [sic] qualified as an expert as to what the effect would be on a person who has

consumed alcohol. Her expertise runs to the machine. He's asking her what physical portion of a person would be impaired. She's not be [sic] qualified as an expert witness in that area.

"THE COURT: The objection is overruled. You may answer the question.

\* \* \* \* \* \*

"[STATE'S ATTORNEY]: Let me ask you this: If you have a person that weighs, say, 220 pounds and they blow a .21, and they say they have not had a drink in 4 or 5 hours; and prior to that time over a period of several hours they had maybe three normal-sized beers; what would you expect them to blow on an intoxilizer instrument?

"[DEFENSE COUNSEL]: For the record I object because he's asking her a hypothetical question that only an expert can answer, and one who has been qualified as an expert to answer that kind of question. This lady has not been qualified.

"THE COURT: State your objection, [DEFENSE COUNSEL].

"[DEFENSE COUNSEL]: I object, your Honor, based on the reason that this lady has not been qualified.

"THE COURT: Your objection is overruled. You may answer the question."

In *Ritchie v. State*, 164 Tex.Cr.R. 38, 296 S.W.2d 551, 553 (1956), we find the following:

Informal Bills of Exception Nos. 26 to 34 and 47 to 50 present appellant's objections to the testimony of J.D. Chastain, Chemist and Toxicologist of the Department of Public Safety, concerning the analysis of the blood sample taken from the appellant.

The witness was permitted to describe the test used in analyzing the blood sample, testify that it was accurate, and testify to the result of the test, over appellant's objection that the same was hearsay and a proper predicate had not been laid. The witness was further permitted to testify as to the percentage of alcohol in the blood that will cause a person to be intoxicated as established by tests on human beings, the percentage of alcohol in a bottle of beer and the burning rate of alcohol by the human body, and the number of bottles of beer a person would have to consume to have a certain percentage of alcohol in his blood, over appellant's objection that no proper predicate had been laid and that the same was a conclusion and was hearsay.

We find no error in permitting the testimony. The witness was shown to be an expert and as such was qualified to testify to the results of the analysis that he made of the blood sample which, under the evidence, was sufficiently identified. *Abrego v. State*, 157 Tex.Cr.R. 264, 248 S.W.2d 490; *Greiner v. State*, 157 Tex.Cr.R. 479, 249 S.W.2d 601; and *Bryan v. State*, 157 Tex.Cr.R. 592, 252 S.W.2d 184. As an expert, the witness was properly permitted to describe the test used and testify to the percentage of alcohol in the blood necessary to render a person intoxicated as based upon tests made of other human beings. *Jones v. State*, 159 Tex.Cr.R. 29, 261 S.W.2d 161; and *Piester v. State*, 161 Tex.Cr.R. 436, 277 S.W.2d 723. The witness was further qualified to testify to the percentage of alcohol in a bottle of beer, the burning rate of alcohol by the human body, and the amount of beer a person would have to consume to have a certain percentage of alcohol in his blood. *Marx v. State*, 161 Tex.Cr.R. 401, 277 S.W.2d 914.

Therefore, if, in the instant case, the witness had been qualified as a chemist or toxicologist, then her testimony would be admissible. Here, the state did not show that the witness had any qualification to express such opinions. Before the testimony of an expert witness is admissible the witness must be competent and qualified to testify. *Hopkins v. State*, 480 S.W.2d 212 (Tex.Crim.App.1972). The trial court erred in allowing the witness to testify in light of the objection. However, in this case, we find the error is harmless beyond a reasonable doubt. The arresting officer testified, in his opinion, that appellant was intoxicated. The results of the intoxilizer test were properly admitted. Appellant's wife testi-

fied that appellant had drank too much to drive. The entire trial was not over the issue of appellant's intoxication, but whether appellant had operated the vehicle. This last ground of error is therefore overruled. The judgment of the trial court is affirmed.

AFFIRMED.