Willie Ann **SKINNER**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 839–82.

Court of Criminal Appeals of Texas, En Banc.

April 20, 1983.

Marian S. Rosen, Mary M. Rawlins, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Timothy G. Taft and Bradley Beers, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

TEAGUE, Judge.

Willie Ann Skinner, appellant, was convicted of promoting by exhibiting to O.W. Farrell obscene material, namely, a film entitled "Cry For Cindy."

Appellant originally was found guilty by a jury, which assessed her punishment at a fine of $20.00. After conviction, she was granted a new trial by the trial court because of a defective jury charge. Thereafter, appellant was again tried in a bench trial on a plea of not guilty and stipulated evidence. She was again found guilty and punishment was again assessed at a fine of $20.00. Appellant appealed the conviction to the Houston First Court of Appeals, which reversed the conviction. The State then petitioned this Court for discretionary review, asserting that the Court of Appeals erred in reversing the conviction. We granted the State's petition to determine whether the Court of Appeals was correct in reversing appellant's conviction. We find it was, although we disagree as to the reasons the Court of Appeals used to reach the result it did.

O.W. Farrell, the complainant, at all times was a Houston police officer. The record reflects that during the afternoon of the day before a search warrant was executed at the movie theatre "Cinema West," Farrell and another Houston police officer, George Hugo, while engaged in undercover vice operations, went to the theatre, which is located at 5819 Richmond in Houston, paid a cashier other than appellant the admission fee of $6.00 per person, and went inside the theatre where they viewed the film, "Cry For Cindy." Another film, "Sensational Janine," was also showing but the record is not clear whether the officers viewed that film. "Sensational Janine" was not seized by the police when they executed the search warrant. Farrell and Hugo reported to their superiors and members of the District Attorney's office their account of what the film, "Cry For Cindy," depicted. Thereafter, they went and obtained from a county criminal court at law judge of Harris County a search warrant to seize, among other things, the film "Cry For Cindy." A warrant of arrest also was included in the search warrant, to arrest "FNU LNU, a white female, approximately 27 years of age, 5'0", 180 pounds, long straight black hair, black rimmed glasses, and olive complexion." Although this person was subsequently identified by name, she did not testify during appellant's trial. A personal data sheet contained in the record reflects that appellant is "a black female, 20 years of age, 5'7" in height, 150 pounds in weight." Police officers went to the theatre at an undisclosed time to execute the search warrant. For reasons not reflected in the record of appeal, the police did not then execute the search warrant. Instead, at approximately 10:30 o'clock p.m., Farrell and Hugo paid appellant, who was then working as the cashier, the $6.00 per person admission fee, went inside the theatre, and again viewed the film, "Cry For Cindy." Appellant informed Farrell and Hugo, when they paid the admission fee, that the movie was about to commence. The search warrant was executed shortly after midnight, after the film "Cry For Cindy" had shown at the theatre that evening, and after all patrons had left the theatre. The film, "Cry For Cindy," among other things, was seized. The record indi-

cates that when the police officers went to the projection booth to seize the film, it was necessary for them to have a "discussion" with the projectionist before he "willingly" and physically removed the film from the camera case and turned it over to the police officers. The record indicates that the projectionist was permitted to make a telephone call to an unidentified person, who thereafter spoke with a Lieutenant Kunkle, who apparently was the ranking Houston police officer in charge of the execution of the search warrant. Kunkle did not testify during the trial. After Kunkle and the unidentified person had their telephone conversation, the projectionist voluntarily removed the film from the camera case. Although Farrell testified that in his "opinion" appellant "appeared to be in control of the premises," there is no factual basis for this statement other than the possible fact that appellant was shown to be the only employee who was visible to them at the time they entered the theatre.

Appellant made absolutely no objection or protest to the execution of the search warrant, did not interfere with the execution of the search warrant, did not request permission to telephone anyone concerning the seizure of the film, and simply acted as we believe any ordinary employee would act under like or similar circumstances. The record is also void of anything to reflect that the police sought her assistance in obtaining the film. Appellant was not arrested when the search warrant was executed but was arrested several days later pursuant to an arrest warrant.

The record also reflects that appellant at the time of her employment at the theatre and trial was a senior student from Alabama attending a university located in Houston. She was studying hospital administration at the university, with future plans to be employed by one of the hospitals in the Houston area. She obtained employment at the theatre so that she could defray the expenses she incurred while attending school. Prior to her arrest, appellant had been employed at the theatre in the capacity of "cashier, the concession girl [selling popcorn], miscellaneous duties, cleaning the theatre ["I keep the place neat."], and other duties, what ever." Appellant generally worked from 6:00 o'clock p.m. until the usual closing hour of midnight, "because of her school schedule." Occasionally, she worked at the theatre during the day. The hours that the theatre operated were not the same day to day because such "depended on how long a given film would last."

Appellant worked at the theatre for approximately one month, her tenure apparently ending after she was arrested. Appellant was not shown to have any managerial responsibilities in the operation of the theatre, was not shown to have anything to do with the operation of the movie projector, or the selection of or the showing of films at the theatre, and was not shown to have any financial interest in the theatre or its operations or in the corporation which owned the theatre. Appellant testified, and her testimony was not disputed, that she had never seen the film entitled "Cry For Cindy," although she was aware of the character of the films which showed at the theatre. From August 13, 1980, through August 26, 1980, approximately 3,000 persons viewed the film, "Cry For Cindy."

Appellant in the direct appeal expressly challenged the sufficiency of the evidence to establish her guilt of what she was accused with committing. In pertinent part, the information in this cause alleges that appellant "did then and there unlawfully and knowing the content and character of the material, intentionally exhibit to O.W. FARRELL obscene material, namely a film entitled, 'CRY FOR CINDY', which depicts patently offensive representations of actual or simulated sexual intercourse and anal sodomy and oral sodomy."

The Court of Appeals reached what we find to be the correct conclusion that the evidence was insufficient. However, to do so, we believe it took a circuitous route. Although the opinion of the Court of Appeals did not commence with the following sentence, it most certainly could have: "Without use of the statutory presumption contained in subsection 43.23(e) it would

have been impossible for a jury or for a judge to have found, beyond a reasonable doubt, that the appellant had 'intended' to promote the obscene film, knowing its content and character." The Court of Appeals eventually ruled that subsection 43.23(e) was unconstitutional, which then caused it to reach the conclusion that the evidence was insufficient.

■ However, it is axiomatic and well established that "the constitutionality of a statute will not be determined in any case unless such a determination is absolutely necessary to decide the case in which the issue is raised. *Ex parte Salfen,* 618 S.W.2d 766 (Tex.Cr.App.1981)." *Coberly v. State,* 644 S.W.2d 734, 735 (Tex.Cr.App.1983).

■ We find it was unnecessary for the Court of Appeals to have addressed and discussed in this cause the validity of the legal presumption that is stated in subsection 43.23(e).* We have concluded, after carefully reviewing the record of appeal, that regardless of the applicability of the presumption stated in subsection 43.23(e), no rational trier of fact could have found appellant guilty beyond a reasonable doubt, either acting individually or as a party, of the allegations of the information. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Acevedo v. State,* 633 S.W.2d 856 (Tex.Cr.App.1982). The question of the sufficiency of the evidence to sustain a State criminal conviction implicates the Fourteenth Amendment. *Jackson v. Virginia,* op. cit. The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Griffin v. State,* 614 S.W.2d 155, 159 (Tex.Cr.App.1981). We answer the relevant question in the negative.

In *Acevedo v. State,* supra, this Court, in holding the evidence was insufficient to uphold the convictions of concessionaires of a theatre and a person who was standing in the doorway between the snack bar and the projection room, stated the following:

We believe 'the fair import of [the] terms' ['exhibit,' 'commercial,' 'assist,' and 'promote'] which constitute the gravamen of the offense of exhibition of obscenity as then proscribed by Sec. 43.23(a)(1), supra, compels the conclusion that the conduct denounced does not include that which is merely incidental to the exhibition of obscenity. To say that one who serves concessions at a drive-in theatre or one who stands in the general vicinity of the projector, absent a showing of any other activity on that one's part, is guilty of 'acting with intent to promote or assist the commercial exhibition' of two obscene films is to contravene the objectives of the penal code.

In its argument to have the conviction sustained, the State relies upon this Court's decision of *Goocher v. State,* 633 S.W.2d 860 (Tex.Cr.App.1982). Its reliance is misplaced. In *Goocher,* the opinion expressly states, near the beginning of the opinion, the following:

In appellant's first ground of error she challenges the sufficiency of the evidence to sustain the conviction. *Specifically, she complains that the State's evidence failed to show the whole of the material.* [Emphasis Added].

Thus, the defendant in *Goocher* did not expressly complain of the sufficiency of the evidence, as to whether the State had proved all of its allegations beyond a reasonable doubt, and this Court did not discuss such issue.

In this instance, however, as did the Court of Appeals, we have construed the appellant's brief on appeal to directly challenge the State's proof as to the allegations of the information, and have concluded that the evidence is insufficient as a matter of Constitutional law under *Jackson v. Virginia,* supra, to sustain the conviction. Also,

* Subsection 43.23(e) of the Penal Code reads as follows:

(e) A person who promotes or wholesale promotes obscene material or an obscene device or possesses the same with intent to promote or wholesale promote it in the course of his business is presumed to do so with knowledge of its content and character.

see *Howeth v. State,* 645 S.W.2d 787 (Tex. Cr.App.1983).

By our holding, we do not mean to imply or leave the inference that a ticket seller or a cashier of a theatre could not ever be guilty of committing an offense under the obscenity statute, either individually or as a party to the offense. We are simply holding that under the facts of this cause no rational trier of facts could have found that appellant committed the offense of commercial exhibition of obscenity beyond a reasonable doubt.

To the extent that the Court of Appeals ordered appellant's conviction reversed for any reason other than what we have given, its decision is overruled. The judgment of the Court of Appeals, 647 S.W.2d 686, reversing appellant's conviction, is affirmed. The cause is remanded to the trial court to enter a judgment of acquittal. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

ONION, P.J., and CLINTON, J., concur in the result.