James Stacey **TURNER**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 1000–86.

Court of Criminal Appeals of Texas, En Banc.

May 18, 1988.

---

William E. Hall, Jr., court appointed on appeal, Conroe, for appellant.

Peter C. Speers, III, Dist. Atty. and J. Lynn Martin and Mary Ann Turner, Asst. Dist. Attys., Conroe, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

Appellant was convicted by a jury of the offense of aggravated sexual assault of a child. See V.T.C.A., Penal Code, § 22.021. At the penalty stage of the trial the appellant pled "true" to each of the paragraphs of the indictment alleging four prior felony convictions for the purpose of enhancement of punishment. After evidence as to these convictions and others were offered as part of appellant's "prior criminal record" the court assessed punishment at 99 years' imprisonment. See V.T.C.A., Penal Code, § 12.42(c).

On appeal appellant complained the trial court erred, over objection, in permitting the testimony of the 7–year–old complaining witness to be presented pursuant to the procedure set forth in Article 38.071, §§ 4 and 5, V.A.C.C.P., rather than in open court in the presence of the jury, and in his presence. He contended the said sections of the statute are unconstitutional. Appellant further complained the court erred in permitting D___ H___ and her mother to both testify to statements made by P___ J___, the complaining witness, when the same was hearsay. Appellant still further complained of the admission of an extraneous offense committed upon D___ H___ through the testimony of D___ H___ and her mother. The Beaumont Court of Appeals found that Article 38.071, §§ 4 and 5, supra, were constitutional and that the procedures mandated were carefully followed. The court likewise rejected appellant's other contentions and affirmed the conviction. *Turner v. State,* 716 S.W.2d 569 (Tex.App.– Beaumont 1986—No. 09–85–049–CR).

We granted appellant's petition to determine the correctness of the Court of Appeals' holding as to the constitutionality of the said statute, and to determine if that

court's ruling as to the propriety of the admission of the extraneous offense, were in conflict with this Court's recent decisions. See Texas Rules of Appellate Procedure, Rule 200(c)(3).

We reverse because of the admission of the extraneous offense and do not reach the constitutionality of the statute question.

We shall briefly review the record and the evidence to place the grounds for review in proper perspective.

The indictment, in its first paragraph, alleged that in Montgomery County, Texas on or about January 1, 1984, appellant "did then and there knowingly and intentionally cause penetration of the vagina of P____ J____, a child younger than 14 years of age, by an object, to wit: the sexual organ of the defendant."

The State first presented the testimony of 10–year–old D____ H____, who was 9 years old on February 4, 1984, when her mother took her and a younger sister for the first time to the home of appellant, where appellant's wife was to be the babysitter while D____ H____'s mother was at work. D____ H____ related that on that occasion she met P____ J____, appellant's stepdaughter, who was then 6 years old. During the day D____ H____, by using her fingers to form a circle and pushing another finger through it, got P____ J____ to tell her that the appellant did that to her, and sometimes would have sexual intercourse with her and her mother all night.

When D____ H____'s mother arrived to take her children home, D____ H____ requested P____ J____ be allowed to spend the night with them. Appellant and his wife agreed. Cynthia Howell testified her daughter, D____ H____, related to her what P____ J____ had said, and she began to question P____ J____ herself. P____ J____ said that appellant had sexual intercourse with her, that her mother knew and got "mad" at appellant. Mrs. Howell related that P____ J____ seemed unhappy and did not appear to want to discuss the matter. After talking to a social worker and the Child Welfare Department in Conroe, Mrs.

Howell filed a complaint with the Department of Human Resources.

Dr. Hillary Lavender examined P____ J____ on February 10, 1984, at the request of the Department of Human Resources. Dr. Lavender found her hymen still was intact, although he expressed the opinion that it was possible that penetration of the vagina could take place without a tearing of the hymen. There was no evidence of trauma to P____ J____'s genital area.

P____ J____'s testimony was presented to the jury via the videotape as earlier noted. With the use of two anatomically correct dolls she indicated that appellant would lay on top of her and that his "ding-a-ling" would go into her "pee hole" or "pussy hole" causing pain, and later she found white stuff on her leg; that her mother cleaned the "stuff" off her; that her mother would be "mad" at appellant, telling him to get off whenever she came into the bedroom. P____ J____ stated that "this" happened before "Christmas time" (no year given) and that it occurred more than 10 times.

On cross-examination P____ J____ related that she had seen the dolls several times before, that her real or natural daddy (whose name she didn't know) had hurt her once, in the way she had described, that she didn't know where she had learned several of the terms she had used.

Several witnesses testified about their actions in talking with P____ J____ and their investigation. School personnel testified that P____ J____ was in special education classes because she was a "language delayed" child and not because she was mentally retarded. Other evidence showed that on February 10, 1984, when P____ J____ was taken into protective custody by Child Protective Services the appellant and his wife left Conroe. Appellant was arrested in Joplin, Missouri in November, 1984, and returned to Montgomery County.

Appellant's wife and P____ J____'s mother, Violet Lorraine Turner, was the only defense witness. She testified that she had previously been married to Curtis James for 13 years and had four children, one of them being P____ J____, who had been

born in Joplin, Missouri; that she had divorced James in the summer of 1981 in New Mexico. She related that in May, 1981, she had discovered James in bed on top of three-year-old P____ J____ with "his deal out," and that she left him at that time. She testified she didn't know appellant then, but had married him a year later in 1982 at Woodlands, Texas. Mrs. Turner testified that P____ J____ had never complained to her about the appellant touching her in any manner that was unusual or unnatural, that she had never seen him doing anything "out of the ordinary" with P____ J____.

On cross-examination she testified that P____ J____ did not dislike the appellant and she (P.J.) had no problem with him that the witness could see. She denied that on several occasions she saw appellant abuse P____ J____ and had told him to stop. She admitted she left Conroe the day P____ J____ was taken into custody by the welfare authorities but contended the move to Joplin, Missouri had been planned. She conceded no notice had been given to the landlord or to appellant's employer. She went on to relate that appellant did not go with her to Missouri, but only appeared in Joplin the day of his arrest.

When asked by the prosecutor to describe P____ J____'s intelligence level, Mrs. Turner replied that P____ J____ could lie, "badly." She guessed P____ J____'s grades were average.

The appellant did not testify.

The State then announced in rebuttal that while appellant had not testified, it intended to offer evidence of an extraneous offense or transaction with another child, that the evidence would be probative "of this person's unnatural attitude that he had toward the complaining witness, being P____." Appellant objected, and the court first heard the additional testimony of D____ H____ and her mother about the extraneous offense or transaction out of the jury's presence. Thereafter appellant objected that there was no exception to the general rule prohibiting the admission of extraneous offenses that would apply un-

der the facts of the case. The objection was overruled.

D____ H____ then testified before the jury that on the occasion on which she had been at appellant's house on February 4, 1980, that Mrs. Turner went to the grocery store, and that she and P____ J____ were on the bed in the bedroom watching television. Appellant came into the room and began tickling P____ J____, and then began tickling D____ H____, who told him to stop. She related that appellant held her legs, kissed her on the cheek, and put his hand down the back of her panties onto her "behind." She finally wiggled and squirmed and appellant released her. It was after this she asked P____ J____ what appellant had been doing to her. D____ H____ then related that she told her mother what happened when her mother picked her up.

Mrs. Howell then testified before the jury and confirmed that D____ H____ had told her what happened and related in detail her conversation with D____ H____.

The court's charge as originally prepared contained a limiting charge on the extraneous offense instructing the jury to consider the same only, if they found appellant committed the extraneous offense, in determining the unnatural attitude to the victim of the alleged offense, and in determining the probability of the act charged. Upon appellant's objection that there was no such "exception" and the charge was improper, the court responded by striking the word "unnatural." The instruction was then included in the jury charge and later argued to the jury by the State.

"As a general rule, the accused can be convicted, if at all, only by evidence that shows that he is guilty of the offense charged. Consequently, evidence that he has committed other crimes that are wholly disconnected from the offense with which he is charged is ordinarily inadmissible." 24 Tex.Jur.3d, Criminal Law, § 3034, pp. 171–172.

"... The rule is now deemed axiomatic and is followed in all jurisdictions [English speaking jurisdictions]." See *Young v. State*, 159 Tex.Cr.R. 164, 261 S.W.2d

836, 837 (Tex.Cr.App.1953); *Rubio v. State,* 607 S.W.2d 498, 499 (Tex.Cr.App. 1980); *Williams v. State,* 662 S.W.2d 344 (Tex.Cr.App.1984). See also *Nance v. State,* 647 S.W.2d 660 (Tex.Cr.App.1983); *Smith v. State,* 646 S.W.2d 452 (Tex.Cr. App.1983); *Cantrell v. State,* 731 S.W.2d 84 (Tex.Cr.App.1987); *Clark v. State,* 726 S.W.2d 120 (Tex.Cr.App.1986).

Only recently in *Parks v. State,* 746 S.W. 2d 738, 739 (Tex.Cr.App.1987), it was stated:

> "As this Court has often noted, evidence of extraneous offenses is of an inherently prejudicial nature and may tend to confuse the issues of the case. *Albrecht v. State,* supra [486 S.W.2d 97 (Tex.Cr.App.1972)]. Such evidence carries with it the additional danger that an accused person may be called upon to defend himself against an implied charge of having a propensity to commit crimes rather than the specific offense for which he is on trial. *Williams v. State,* supra; *Elkins v. State,* 647 S.W.2d 663, 665 (Tex.Cr.App.1983); *Bates v. State,* 643 S.W.2d 939, 944 (Tex.Cr.App.1982); *Albrecht v. State,* supra."

"Thus, this Court has consistently held that proof of prior specific acts of misconduct, similar happenings, or the commission of extraneous criminal wrongs which are unrelated to the offense for which the accused is on trial are generally not probative of the contested material issues in the case and are inadmissible." *Soffar v. State,* 742 S.W.2d 371, 377 (Tex.Cr.App.1987), and cases there cited.

■ The above general policy and rule "precluding the admission into evidence of extraneous conduct must in some circumstances give way, thus permitting the latter to become admissible." *Soffar v. State,* supra at 377.

"This is because circumstances exist in a variety of fact situations which either mitigate the danger of such evidence or which justify the admission of such evidence in spite of the danger that this evidence will create unfair prejudice." *Parks,* supra, at 739.

■ A list of common exceptions to the general rule prohibiting the admission of extraneous offenses is to be found in *Albrecht v. State,* 486 S.W.2d 97, 100–101 (Tex.Cr.App.1972).[1] This list is exemplary rather than exhaustive. *Williams v. State,* 662 S.W.2d 344 (Tex.Cr.App.1984); *Morgan v. State,* 692 S.W.2d 877 (Tex.Cr.App.1985). It has been said, however, that a rote application of the general rule and "automatic" exceptions should be avoided and an analysis should be performed in every case in which the admission of an extraneous offense or transaction is sought. *Boutwell v. State,* 719 S.W.2d 164, 172 (Tex.Cr.App. 1985) (Opinion on original submission).

■ An extraneous offense is not admissible unless "... the transaction is *relevant* to *a material* issue in the case; and, the relevancy value of the evidence outweighs its inflammatory or prejudicial potential." *Williams,* supra, at 346 (emphasis in original). See also *Plante v. State,* 692 S.W.2d 487, 491 (Tex.Cr.App.1985); *Mann v. State,* 718 S.W.2d 741, 743 (Tex. Cr.App.1986).

■ Every case must be examined on its own facts, strengths and weaknesses to determine whether the extraneous transaction is relevant to a material issue, and if it

---

1. In *Albrecht,* we stated:

    "Evidence of extraneous offenses committed by the accused has been held admissible: (1) To show the context in which the criminal act occurred—what has been termed the 'res gestae'—under the reasoning that events do not occur in a vacuum and that the jury has a right to hear what occurred immediately prior to and subsequent to the commission of that act so that they may realistically evaluate the evidence. (2) To circumstantially prove identity where the state lacks direct evidence on this issue. (3) To prove scienter, where intent or guilty knowledge is an essential element of the state's case and cannot be inferred from the act itself. (4) To prove malice or state of mind, when malice is an essential element of the state's case and cannot be inferred from the criminal act. (5) To show the accused's motive, particularly where the commission of the offense at bar is either conditioned upon the commission of the extraneous offense or is a part of a continuing plan or scheme of which the crime on trial is also a part. (6) To refute a defense theory raised by the accused." (Footnotes omitted.) 486 S.W.2d at 100–101.

is, whether the relevancy value outweighs the inflammatory or prejudicial potential. See *Franklin v. State*, 488 S.W.2d 826 (Tex.Cr.App.1972); *Collazo v. State*, 623 S.W.2d 647, 648 (Tex.Cr.App.1980); *Castillo v. State*, 739 S.W.2d 280 (Tex.Cr.App. 1987). Thus, whether an extraneous transaction is admissible must be decided on an ad hoc basis. *Soffar v. State*, 742 S.W.2d 371, 377 (Tex.Cr.App.1977). The burden is upon the prosecution to show that extraneous evidence is admissible under the two-prong test described above, sometimes referred to as the "*Williams* (662 S.W.2d 344) test." *Parks*, supra, at 741.

■ Further, it should be remembered that even though evidence of another crime may be relevant to the crime charged, such evidence should not be admitted unless the commission of the other crime is clearly proved and the accused is shown to have been its perpetrator. *Castillo*, supra, at 289; see 24 Tex.Jur.3d, Criminal Law, § 3055, p. 180; *McCann v. State*, 606 S.W. 2d 897, 900 (Tex.Cr.App.1988); *Landers v. State*, 519 S.W.2d 115, 120 (Tex.Cr.App. 1975); *Eanes v. State*, 546 S.W.2d 312, 315 (Tex.Cr.App.1977).

In *Boutwell v. State*, supra (opinion on rehearing), this Court reviewed the "exception" established in *Battles v. State*, 140 S.W. 783 (Tex.Cr.App.1911), and *Johns v. State*, 155 Tex.Cr.R. 503, 236 S.W.2d 820 (Tex.Cr.App.1951). These cases apparently approved a very narrow exception in sex cases permitting the admission of acts which occurred between the minor complaint and the defendant so as to explain the charged act and view such an unnatural act in light of the relationship of the parties as well as to make the child's accusation more plausible. The cases further recognized the further prerequisite that extraneous action is relevant to a material issue in the case and relevancy outweighs the prejudicial potential.

The *Boutwell* opinion on rehearing observed that in *Johnston v. State*, 418 S.W. 2d 522 (Tex.Cr.App.1967), and *McDonald v. State*, 513 S.W.2d 44 (Tex.Cr.App.1974), this Court had expanded the above discussed exception to permit the admission of extraneous sexual offenses between a defendant and *a third party* not involved or connected with the offense charged. Both *Johnston* and *McDonald* seem to hold that in a sodomy case involving a minor where there was an alibi defense, but where identity was not an issue, extraneous sexual offenses involving a defendant and a third party were admissible to show "the probability of the act charged and the unnatural attention" of the defendant toward the complainant in the offense being tried, not the third party.

The *Boutwell* opinion went on to hold that the "expansion" in *McDonald* and *Johnston* was erroneous and that it was inappropriate to admit evidence of extraneous sex offenses committed by the defendant against a third party to show "probability" and "unnatural attention."

In *Boutwell*, supra, at 179 (opinion on rehearing), it was stated:

"We reiterate the 'probability' and 'unnatural attention' language as justification for admitting extraneous sexual acts between a defendant *and* a third party is inappropriate and incorrect. The limited exception applies only to extraneous sexual acts between the defendant and the complainant. And, even as to these acts, as explained, the 'probability' and 'unnatural attention' language, by itself, is not justification or rationale for admission. That language must be used as it originated as part of the res gestae and context rationale espoused in *Battles*, supra and *Johns*, supra. Therefore, to the extent that *McDonald*, supra, and *Johnston*, supra, admitted extraneous acts between the defendant and a third party on a 'probability' and 'unnatural attention' exception, they are overruled."

■ In the instant case what was the material issue in the case to which the extraneous offense with a third party relevant? After the State presented its case-in-chief the appellant did not testify. There was no personal denial of the offense. He did call his wife, the mother of the complaining witness. She confirmed P____ J____'s testimony that her natural father had abused P____ J____ several

years earlier. She contradicted P____ J____'s testimony that she (the mother) knew about appellant's abuse of P____ J____. And, Mrs. Turner, on cross-examination, told the prosecutor that P____ J____ lies "badly." Does this conjure up a material issue to which the extraneous transaction was relevant? We do not so conclude. Even if it can be argued that the extraneous transaction with a third party was relevant to a material issue, then clearly the inflammatory and prejudicial potential outweighed any relevancy given the circumstances of the instant case. The two-pronged *"Williams"* test was not met.

Further, in the instant case the trial court admitted the extraneous transaction with a third party, another child, on the only basis urged by the State that it showed the unnatural attitude of the appellant towards the complaining witness and the probability of the act charged.[2] This, of course, was error in light of *Boutwell*, supra. Even if the transaction had been properly admitted on a basis other than that stated at trial, the trial court threw the fat in the fire when in its charge it limited the jury's consideration of the extraneous offense or transaction to a determination of appellant's "attitude" towards the complaining witness and the "probability of the act." See *Boutwell*, supra; cf. *Marras v. State*, 741 S.W.2d 395, 407–408, (Tex.Cr.App.1987).

The court having erred in admitting D____ H____'s testimony as to an extraneous transaction also erred in admitting before the jury her mother's testimony of D____ H____'s "outcry" following the extraneous transaction.[3]

The Court of Appeals in its opinion, rejecting appellant's points of error concerning the single extraneous transaction between the appellant and a third party not connected with the offense charged, stated "We think the extraneous offenses (sic)

tended to enable the jury to more properly evaluate questionable or suspect testimony give by a minor against an adult responsible for the minor's well-being. *Williams v. State*, 490 S.W.2d 604 (Tex.Cr.App.1973); *Veloz v. State*, 666 S.W.2d 581 (Tex.App.-Houston [1st Dist.] 1984, no pet.); *Garcia v. State*, 629 S.W.2d 196 (Tex.App.—Corpus Christi 1982, pet. ref'd)." 716 S.W.2d at 572.

These three cases were cited by the State in its brief and were also decided before *Boutwell*, supra. Further, this *Williams* case [490 S.W.2d 604] and *Garcia* did not involve an extraneous offense or transaction between the defendant and a third party but the alleged victim of the crime, and are distinguishable from the instant case. *Veloz* involved an extraneous transaction between the defendant and a stepdaughter, other than the alleged victim-stepdaughter. The objection to the evidence there was sustained and the trial court ordered the jury to disregard such evidence. Without deciding whether the instruction to disregard cured the harm, the appellate court held the evidence was admissible because the third party witness there also stood in locus parenti to the defendant. That is clearly not our fact situation here. Further, *Veloz* relied upon *Garcia v. State*, 573 S.W.2d 12, 16 (Tex.Cr. App.1978), which in turn relied upon *McDonald* and *Johnston*, which were overruled in *Boutwell*, supra, to the extent of any conflict. *Boutwell* clearly meant to overrule all progeny of *McDonald* and *Johnston*. The Court of Appeals erred in overlooking *Boutwell* and in merely relying upon the cases cited by the State.

In its brief before this Court the State continues to argue that the evidence of the extraneous transaction with a minor third party was highly probative because it showed appellant "had an unnatural affection towards young girls" and that it

---

**2.** The prosecution never claimed at trial that the extraneous offense was admissible under any of the "automatic" or "common" exceptions to the general rule listed in *Albrecht* or elsewhere.

**3.** Rule 404(b), Texas Rules of Criminal Evidence, effective September 1, 1986, governs the

admissibility of other crimes, wrongs, or acts since that date. It was not in effect at the time of appellant's 1985 trial. See also Rules 401, 402, and 403, Texas Rules of Criminal Procedure. These rules are not applied retroactively.

showed appellant "engaged in a continuing course of illicit conduct with female children left in his care," and showed "the acts complained of probably occurred." The State does not, even now, urge any other basis which would sustain the admission of the extraneous transaction.

Only recently in *Cruz v. State*, 737 S.W. 2d 74 (Tex.App.–San Antonio 1987), the court in reversing the conviction noted the holding in *Boutwell*, supra, that it was inappropriate to admit extraneous sex offenses committed by a defendant against a third party to show "probability" and "unnatural attention." The court then stated:

"This leaves us with the State's contention that the evidence was admissible to showing a continuing course of conduct on the part of the defendant...."

In rejecting this latter contention the Court of Appeals quoted from *Boutwell*:

" '[T]he extraneous acts between appellant and [third parties] does not help prove appellant committed the charged offenses except under a propensity rationale, for which they are not admissible.' *Boutwell*, 719 S.W.2d at 180."

We agree.

The question remains whether the errors in admitting evidence of the extraneous transaction calls for reversal. Rule 81(b)(2), Texas Rules of Appellate Procedure, provides:

"(2) Criminal cases. If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment."

We are unable to say beyond a reasonable doubt, given the facts and circumstances of the case, that the error in admission did not contribute to the conviction. Reversal must be ordered.

Having determined that a reversal of the conviction must be ordered, we do not reach appellant's other ground for review concerning the constitutionality of §§ 4 and 5 of Article 38.071, V.A.C.C.P., in effect at the time of his trial.

▮ The "constitutionality of a statute is not to be determined in any case, unless such a determination is *absolutely* necessary to decide the case in which the issue is raised." (Emphasis supplied.) *Briggs v. State*, 740 S.W.2d 803, 806–807 (Tex.Cr. App.1987). See also *Taylor v. State*, 172 Tex.Cr.R. 461, 358 S.W.2d 124 (App.1967); *Parent v. State*, 621 S.W.2d 796 (Tex.Cr. App.1981); *Coberly v. State*, 644 S.W.2d 734, 735 (Tex.Cr.App.1983); *Skinner v. State*, 652 S.W.2d 773, 776 (Tex.Cr.App. 1983); *Smith v. State*, 658 S.W.2d 172 (Tex.Cr.App.1983); *Hypke v. State*, 720 S.W.2d 158 (Tex.App.–Houston [14th] 1986).

The judgments of the Court of Appeals and the trial court are reversed and the cause is remanded to the trial court.

MILLER and CAMPBELL, JJ., concur in the result.

WHITE, J., dissents.

CLINTON, Judge, dissenting.

Notwithstanding that we granted this petition to review, *inter alia*, the constitutionality of Article 38.071, §§ 4 and 5, V.A. C.C.P., the majority expressly declines to reach that most important topical issue. I dissent.

To excuse its failure to address a ground for review that is in all things properly before the Court, the majority invokes "a rule of statutory construction," *Taylor v. State*, 358 S.W.2d 124, at 125 (Tex.Cr.App. 1962) (citing 12 Tex.Jur.2d 377, Constitutional Law, § 32 [now 12 Tex.Jur.3d 532, Constitutional Law § 34]. From authorities cited in its Slip Opinion, at 14, however, patently that rule is inapposite here.

Decisions relied on fall into one of three categories:

first, opinions by this Court on direct appeal, *viz: Taylor v. State*, supra; *Parent v. State*, 621 S.W.2d 796 (Tex.Cr.App. 1981); *Smith v. State*, 658 S.W.2d 172 (Tex.Cr.App.1983)

second, opinions by this Court on PDR admonishing a court of appeals that it

need not have dealt with a constitutional question, namely: *Briggs v. State,* 740 S.W.2d 803, at 806–807 (Tex.Cr.App. 1987); *Coberly v. State,* 644 S.W.2d 735, at 736 (Tex.Cr.App.1983); *Skinner v. State,* 652 S.W.2d 773, at 776 (Tex.Cr. App.1983);

third, an opinion by a court of appeals stating the rule on direct appeal, i.e., *Hypke v. State,* 720 S.W.2d 158, at 159 (Tex.App.—Houston [14th] 1986) PDR refused.

That the rule of statutory construction may be applicable in a case on direct appeal does not mean that it also precludes this Court from deciding constitutionality of a statute in exercise of its jurisdiction, power and authority of discretionary review. Neither constitutional source, Article 5, § 5, nor implementing statutes, Articles 4.04, § 2; 44.45(a) and (b), V.A.C.C.P., impose any such restriction on the Court, and for us gratuitously to lay one down is to defeat plain constitutional intent and statutory purpose that this Court determine as a matter of sound judicial discretion when an important question of law should be settled by the Court.

In granting this ground for review we have recognized that the instant cause presents just such a unsettled question. Now, however, the majority would sustain other grounds, order a reversal and remand to the trial court. There, in the most likely event of a new trial, undoubtedly the same videotape will be received in lieu of live testimony from the minor victim—under aegis of the decision of the Beaumont Court of Appeals. Thus, other than ruling out admission of testimony concerning an extraneous offense, we settle nothing about the perplexing constitutional issue still in this case, and in others as well.

To refusal of the majority to cause this Court to perform the reviewing role in which it has been cast by law, I must dissent.