

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-12-00136-CR

_____

JUSTIN RAY CHILDS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 12F0310-102

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Juries have concluded that Justin Ray Childs and his brother, Brandon Kihega, killed Billy Stone at Stone's home in February 2011.[1] Childs was convicted, as a party, of capital murder. The mandatory sentence of life imprisonment without parole was imposed as the State did not seek the death penalty. The appeal claims error in admission of evidence that Childs previously had been convicted of a felony and sent to prison, was a member of a gang in prison, previously sold marihuana, and, in the course of Stone's murder, kicked Stone in the head. We find no harmful error and affirm the conviction.

I. Facts

The sufficiency of the evidence is not challenged, but an overview of the facts of the case will be helpful in our discussion of Childs' points of error. On the night of February 23, 2011, several men gathered at a shop behind Stone's house where they drank alcoholic beverages and discussed guns, motorcycles, and a fledgling motorcycle club. Stone knew Kihega; witnesses said the two were friends, and Stone hired Kihega to do odd jobs. During the course of the evening, a rivalry developed between Childs and Stone as the two bragged about their skills in fighting, the amount of money and property they owned and their athletic abilities, among other matters. According to some testimony, Stone asked Childs if he would assault someone if paid, and Childs replied that he would "get rid" of a person for more money. Around midnight, most of the guests left leaving only Kihega, Childs, and Stone. Stone was shot twice, and the evidence

---

[1]Kihega was convicted of capital murder in a separate trial.

indicated he was shot with his Desert Eagle pistol, which he had been displaying earlier in the evening.

## II. Appellate Issues

Childs complains that the trial court's admission of evidence of specific acts of his conduct violated Rules 403 and 404(b) of the Texas Rules of Evidence. *See* TEX. R. EVID. 403, 404(b).

We review a trial court's admission or exclusion of extraneous-offense evidence for abuse of discretion. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). A trial court's decision regarding admissibility of evidence will be sustained if correct on any theory of law applicable to the case, even when the court's underlying reason for the decision is wrong. *Romero v. State*, 800 S.W.2d 539, 543–44 (Tex. Crim. App. 1990). Rule 404(b) provides that evidence of "other crimes, wrongs or acts" is inadmissible to prove a defendant's character in order to show action in conformity therewith. TEX. R. EVID. 404(b). This type of evidence may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.*; *Swarb v. State*, 125 S.W.3d 672, 680 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd). This list is not exclusive. *Turner v. State*, 754 S.W.2d 668 (Tex. Crim. App. 1988). Also, "events do not occur in a vacuum[,]" and evidence of extraneous offenses may be admissible "[t]o show the context in which the criminal act occurred." *Albrecht v. State*, 486 S.W.2d 97, 100 (Tex. Crim. App. 1972); *see also Rogers v. State*, 853 S.W.2d 29, 32–33 (Tex. Crim. App. 1993) (discussing admissibility of same transaction contextual and background evidence).

3

Childs objected to the admission of any testimony of his prior felony conviction and resulting incarceration or the fact that he had been in a prison gang.[2] The trial court overruled the objections.

The State eventually offered edited versions of each of Childs' three video-recorded statements.[3] The court reporter's record contains, in the margin of each page, a time stamp marking testimony and events recorded in the record. At each occasion when the reporter's record indicates a video-recorded statement was played for the jury, the time stamps connote that only the edited version of each statement was played.[4] Additionally, the jury deliberated only about thirty-seven minutes in this case, and there is no indication they asked to view any of the video-recorded statements during deliberations. Because the cumulative length of the edited video-recorded statements is about fifty-three minutes, it appears very unlikely that the jury was exposed to the unedited statements.

From the record, it also appears very unlikely that the jury was exposed to Childs' statements acknowledging his prior felony conviction and admitting that he sold marihuana. Nevertheless, because the full-length versions of the second and third video-recorded statements

---

[2]On appeal, Childs only challenges the admissibility of such evidence under Rules 403 and 404(b). *See* TEX. R. EVID. 403, 404(b).

[3]The State offered, and the trial court admitted, the full-length video recordings of Childs' second and third statements as well as the shorter edited versions of each. The unedited version of the first statement does not appear to have been admitted into evidence; the edited version was admitted.

[4]Exhibit 129, the edited version of Childs' first video-recorded statement, is about eleven minutes, seventeen seconds long. According to the court reporter's record, it took eleven minutes and thirty seconds to play this video recording in the courtroom. The edited second video-recorded statement, Exhibit 132, is thirty-three minutes, seven seconds long. It took thirty-three minutes and six seconds to play this video recording in the courtroom. Finally, the edited third video-recorded statement, Exhibit 158, is ten minutes, twenty-eight seconds long and played for about ten minutes, fifty-four seconds during trial.

were admitted into evidence and the State does not argue that the jury did not observe all video-recorded statements, we have reviewed them and will consider Childs' appellate complaints regarding them.[5]

### III.  Evidence of Imprisonment, Marihuana

Childs' second video-recorded statement was introduced into evidence as State's Exhibits 131 (unedited) and 132 (edited).  In the unedited version, Childs said Stone asked him about his tattoos.  Childs said in response that he got the tattoos while incarcerated in the Bradshaw state jail facility, where he had been held on a "possession charge."  Another witness testified to similar matters—Jacob McDaniel was at the gathering where the murder took place and heard Childs state that he had been in prison in Houston.  McDaniel also observed Childs' gang-related tattoos.  Objections were made in each instance that admitting such evidence would violate Rules 403 and 404 of the Texas Rules of Evidence.

Also in the second video-recorded statement, Childs made an unsolicited admission that he at one time sold marihuana.  In the course of being questioned about where Stone's Desert Eagle handgun ended up after the brothers killed and robbed him, Childs said the pistol was with a man named "Rabbit" to whom he once sold marihuana.  Again, this evidence drew objections based on Rules 403 and 404.

In a murder case, Texas law authorizes the admission of evidence of "the previous relationship existing between the accused and the deceased, together with all relevant facts and

---

[5]This could be clarified if the State had specified, when playing the video-recorded exhibits, exactly which statement was being played.  Alternatively, the trial court could have required the court reporter to transcribe the statement as it was being played for the jury.  *See* Tex. Sup. Ct., UNIFORM FORMAT MANUAL FOR TEXAS REPORTERS' RECORDS § 3.20 (2010), *available at* http://www.crcb.state.tx.us/pdf/Uniform%20Format%20Manual-07012010.pdf (contemporaneous transcription of video exhibit not required unless ordered by trial court).

circumstances going to show the condition of the mind of the accused at the time of the offense." TEX. CODE CRIM. PROC. ANN. art. 38.36(a) (West 2005). The State asserts that the evidence at issue was admissible to establish Childs' reputation as a "tough guy." The State's argument is that on the night in question, Childs attempted to display his fearlessness to the gathered crowd by bragging about his accomplishments, and, thereby, established both a previous relationship with the victim as well as the condition of his mind at the time of the offense. *Id.* However, the Texas Court of Criminal Appeals has explained that the code provision allowing evidence of a previous relationship and state of mind of the defendant does not broaden or otherwise affect the rules of evidence. *Fielder v. State*, 756 S.W.2d 309, 318 (Tex. Crim. App. 1988) ("[C]ollateral facts which do not logically tend to prove or disprove matters in issue are not admissible."). Whether Childs attempted to convince others he was "tough" is not a fact of consequence that is material in this case. This evidence appears to do exactly what Rule 404 is designed to prevent—use other crimes, wrongs, or acts to prove character in order to show action in conformity with such character. We believe the court erred in admitting the evidence that Childs was previously in prison or jail for another crime, was a gang member, or had sold or possessed marihuana [6]

## IV. Evidence that Childs Kicked Stone after the Murder

During one of Childs' video-recorded statements, the subject of Childs allegedly kicking Stone in the face after the murder was discussed. According to Childs, the investigator stated

---

[6]The State does not argue that evidence of Childs' statements to others at the scene on the night of the murder is admissible as background evidence. The Texas Court of Criminal Appeals has held that "background" evidence conflicting with Rule 404(b) is inadmissible. *Mayes v. State*, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991).

6

during the interview that Kihega said Childs kicked Stone in the face after Kihega shot Stone. We find no such statement in the record. Rather, we find an exchange between Childs and Investigator Robby McCarver where McCarver is questioning Childs about the shoes Childs wore on the night of the murder.[7] Childs claimed the shoes he wore that night were either in his car or apartment, and McCarver stated that those sites had been searched and that the shoes were not found. The interrogation became argumentative, and McCarver stated that he was very interested in finding the shoes "because [you,] Justin[,] stood over this guy and kicked him in the face and sa[id], 'how's that feel bitch.'" Childs responded that he did not kick Stone. He then stated that he may have slipped leaving the scene and asked McCarver, "Why would I kick a dead guy?" McCarver replied that it makes as much sense as killing him and asked why Childs did not just take Stone's money instead of killing him. McCarver then asked, "Why, if I'm [Kihega], would I just not say [Childs] stole his money. I told him not to but he did it anyway. Why would I say I took it?" However, there is nothing in either the edited or the full-length statements where McCarver said to Childs that Kihega had made any statement regarding Childs kicking Stone after the shooting.

An interrogating officer has significant leeway in questioning a suspect about details of a crime. *See Wilson v. State*, 311 S.W.3d 452, 461 n.36 (Tex. Crim. App. 2010). McCarver simply kept confronting Childs with inconsistencies in Childs' explanation of his involvement and contrasting Childs' stories with other evidence gleaned in McCarver's investigation. All of

---

[7]Bloody shoeprints which were very similar to the prints of an Air Jordan sneaker were found near Stone's body and in the house. Kihega was wearing sandals the night of the murder and witnesses testified that at times Childs wore Air Jordans.

7

McCarver's statements or questions to Childs were in the form of accusations regarding Childs' involvement, which Childs continued to deny. In other words, McCarver accused Childs of kicking Stone after Kihega shot Stone, which Childs denied. This was not an extraneous offense, but rather questioning by law enforcement about Childs' role in the instant killing.

Further, a similar statement was admitted without objection. Kihega's wife, Kimberly, was asked about any statement she overheard regarding "Justin's part in the crime." Childs objected on grounds of hearsay and confrontation, not extraneous bad act. Childs' defense counsel clarified his objection by stating that the question would allow evidence of Brandon Kihega's statements. In response, the State explained that it was only seeking admissions from Childs, not hearsay statements from other witnesses. After that exchange, the trial court overruled the objections. The State attorney rephrased the question and asked, "Will you tell the jury what [Childs] said?" No objection was made to the question, and Kimberly responded that Childs "was bragging about having stomped Stone in the face when he was down gurgling and calling him MF and, you know, how do you like that now." A complaint regarding improperly admitted evidence is waived or forfeited if the same evidence is introduced elsewhere during trial without objection. *Massey v. State*, 933 S.W.2d 141, 149 (Tex. Crim. App. 1996). We find no error.

## V.      Harmless Error

The erroneous admission of an extraneous offense does not constitute constitutional error. *Peters v. State*, 93 S.W.3d 347, 354 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd); *see also Ladd v. State*, 3 S.W.3d 547, 568 (Tex. Crim. App. 1999) (even if admission of extraneous

8

offense evidence had been error, would be reviewed under Rule 44.2(b)). Because it is not a constitutional error, it must be disregarded unless it affects a substantial right of the accused. TEX. R. APP. P. 44.2(b). An error affects a substantial right when it has a substantial and injurious effect or influence on the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). If the error had no influence or only a slight influence on the verdict, it is harmless. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). However, if we harbor "grave doubts" about the error's influence on the verdict, then we must treat the error as if it had a substantial and injurious effect. *See Webb v. State*, 36 S.W.3d 164, 182–83 (Tex. App.— Houston [14th Dist.] 2000, pet. ref'd) (en banc).

> In assessing the likelihood that the jury's decision was adversely affected by the error, the appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case. The reviewing court might also consider the jury instruction given by the trial judge, the State's theory and any defensive theories, closing arguments and even voir dire, if material to appellant's claim.

*Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000) (citing *Llamas v. State*, 12 S.W.3d 469, 471 (Tex. Crim. App. 2000)).

The net effect of the improperly admitted evidence was to show that Childs had some relatively minor criminal history. The nature of the evidence was at most a description of low-level improper conduct. By contrast, very cogent circumstantial evidence supported the verdict that Childs participated in murdering Stone. Several witnesses testified that Childs and his brother, Kihega, were the last two guests with Stone after a night of drinking, boasting, and bragging. The men described Stone's Desert Eagle pistol, which Stone showed off to his guests

9

that night and which was ultimately used to kill him. Kihega's wife, Kimberly, testified that Kihega told her before the crime that he and Childs planned to rob Stone. The day after the killing, she went with Kihega to Childs' apartment, where she found Childs wearing bloody jeans and holding bloody shoes. Childs had the pistol used the night before at his apartment, and Kihega retrieved it. According to Kimberly, Childs bragged about having "stomped" Stone in the face while Stone was "down gurgling." She also quoted Childs as saying he had gone back "out there" to steal a BMW but that he aborted that endeavor when an alarm sounded. One of Stone's neighbors testified he heard two handgun shots and the alarm on Stone's BMW about 2:00 a.m. the morning of the killing.

We also note that the State did not refer to Stone's previous conviction, imprisonment, gang affiliation, or marihuana sales during its jury argument. Additionally, the trial court limited the jury's consideration of all evidence of other offenses to a determination of Childs' state of mind at the time of this offense. After examining the entire record, we conclude that any error in admission of the improper extraneous bad act or offense evidence had no or at most a slight influence on the jury's verdict. Thus, the error must be disregarded. TEX. R. APP. P. 44.2(b).

We affirm the trial court's judgment.


Jack Carter
Justice

Date Submitted:     April 8, 2013
Date Decided:       May 2, 2013

Do Not Publish

10